### MESSERSMITH v. CITY OF BUFFALO.

(Supreme Court, Appellate Division, Fourth Department. May 4, 1910.)

1. MUNICIPAL CORPORATIONS (§ 845*)—TORTS—INJURIES—ACTION—SUFFICIENCY OF EVIDENCE—NEGLIGENCE.

In an action against a city for injuries to property by the bursting of a water main claimed to have been caused by weakening the main by making an improper connection therewith, evidence *held* to sustain a finding of negligence in inserting a cock in a two-inch hole in the main so as to weaken it without strengthening the main so as to bear the pressure.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1799; Dec. Dig. § 845.*]

2. MUNICIPAL CORPORATIONS (§ 827*)—TORTS—WATERWORKS.

A city is liable for the negligence of its employés in constructing and maintaining a waterworks to supply consumers, so that it would be liable for injuries resulting from the bursting of a main by reason of negligently making a connection for a consumer.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1772; Dec. Dig. § 827.*]

Appeal from Trial Term, Erie County.

Action by Henry Messersmith against the City of Buffalo. From a judgment for plaintiff, defendant appeals. Affirmed.

The action was commenced on the 6th day of September, 1902, to recover damages sustained by the plaintiff because of the bursting of one of defendant's water mains, which caused the flooding of plaintiff's premises, which occurred on the 8th day of March, 1902. The plaintiff claims that the water main broke because of the negligent manner in which the defendant's employés tapped such main and put a service pipe connection into it.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Clark H. Hammond, Corp. Counsel (George E. Pierce, of counsel), for appellant.

Devoe P. Hodson (Philip A. Laing, of counsel), for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

McLENNAN, P. J.  The water main in which the break occurred, and which occasioned the damages for which the plaintiff seeks to recover, was laid in Michigan street about the year 1860.  On or about the 26th day of December, 1901, application was made to the water department of the city of Buffalo by a resident to put a connection into such main, consisting of a two-inch pipe, in order to supply such resident with water.  The applicant was to pay the city for making the connection, and, that being arranged for, the main was uncovered and the connection asked for made.  It was made by the employés of the city; it furnishing the tools and appliances for such purpose. After the connection was made, the ditch was refilled, the dirt tamped down, and no difficulty was discovered with the main, or the connection, until the 8th day of March following.  On that date such main burst at the place where the connection was made, and the premises of the plaintiff were flooded.  At the time the main in question was cast and put into position, the method of casting such mains was different than that more recently employed.  In the case of the main in question, which was a ten-inch main, while the thickness of the cast iron was supposed and intended to be one-half inch, it was discovered after it burst that it was in fact only six-sixteenths of an inch at the place where the tap was made, while in other places it was as thick as nine-sixteenths of an inch.  In other words, it was apparently well understood by the parties that in mains cast under the old method or system there was liable to be thin places in the cast iron, which would render such mains more liable to break when there was an opening made for the connection.  In this case the main was ten inches in diameter, and the defendant sought to put into it a connection two inches in diameter, and it did this without in any way reinforcing the main by putting a band around it, or otherwise; and the real charge of negligence is that, in tapping this old main by making an opening $2\,^9/_{16}$ inches in diameter, the employés of the defendant were negligent, and that such negligence caused the damages for which the plaintiff seeks to recover.  There was considerable evidence devoted to that issue, and practically it was the only question of fact which was litigated.

According to the testimony of the engineer connected with the Chicago Water Department, called as a witness for defendant, such department requires a 10-inch pipe to be cast at a thickness of $^{57}/_{100}$ of an inch.  The place where the tap in question was made was only $^{37}/_{100}$ of an inch.  In other words, it was a fifth of an inch thinner than that required by the Chicago Water Department.

The evidence shows that one Silvey did the work and put in the connection in question.  He had been employed in the Buffalo Water Department for about 19 years, having been tapper's helper for about 5 years, then tapper for about 10 years, and inspector for about 3 years. He testified that during his experience with the Buffalo Water Department he had known of three different taps being made where 2-inch corporation cocks were inserted in a 10-inch main and in each case no reinforcement was made and no break occurred.  But he could not state whether the three connections that had been made by him, or under his direction, of 2-inch pipe in a 10-inch main, had been made

in old 10-inch pipe, or in pipe which had been made more recently and by and under the improved methods.

It is apparent that by making such connection the main is very materially weakened because over 2½ inches of it are cut away. The tap in question was put in when the water was on at full pressure. Apparently no examination was made to ascertain the condition of the main, except as it could be ascertained by looking at the outside, and some of the witnesses say that in order to properly do such work the water pressure should have been turned off and an examination made, especially of this old main, in order to see whether a connection of two inches in diameter could properly be made without reinforcing the main.

It is also claimed that the cock used was so made that as it was screwed into the main it would become more and more tight and act something like a wedge and put increased pressure on the main, which would have a tendency to crack or break it, and the referee in his findings lays some stress upon the fact that the cock used was in that situation.

Another witness called by the defendant is an employé of the Mueller Manufacturing Company, which concern makes the machine and appliances for making such connections. He states that in his opinion it is safe and proper to insert a 2-inch tap into a 10-inch pipe with a Mueller machine, and bases his assertion upon experiments made in their factory; but it appears that all such experiments were made upon new cast-iron pipe when not in actual use in a water main.

Another witness called by the plaintiff, who was deputy water commissioner of the city of Buffalo, and who is a civil engineer of 30 years' standing, says that if he were to put anything larger than a two-inch tap into a pipe of any size he would reinforce the main. He says that if he were to put a two-inch tap into a four-inch pipe, or six-inch pipe, he would use a saddle for reinforcing it; but he says that if he had a proper machine he would not hesitate to put a three-inch corporation cock in a twelve-inch pipe without reinforcement at all. He says, as to the thickness of the pipe, that if he knew of a pipe which was only a quarter of an inch thick, instead of a half inch thick, he would take it out and would not make the connection with it at all. This witness says that if he had a request to put a two-inch tap into one of the old ten-inch pipes he would put it in; but he further says that he does not know that any such tap has ever been put in since his connection with the Buffalo Water Department.

It appears without contradiction that no effort was made to ascertain the thickness of the main at the place where it was proposed to put in the new cock, and so notwithstanding the city employés knew it was one of the old mains, and that when it was cast there was liable to be thin places in it. It is practically conceded that saddles for reinforcing pipe, where it is proposed to put in cocks, are in common use and have been for years.

The plaintiff called a Mr. Louis H. Knapp, who is a civil engineer in active practice since 1869, and who was connected with the Buffalo Waterworks as an engineer and superintendent for about 30 years.

He says that it is not a safe and proper thing to put a two-inch tap into a ten-inch main like the one in question. He says there are two ways of making a two-inch connection: One is by the use of a saddle and the other is by the use of a branch, both of which methods, he says, are in common use, and will prevent, if adopted, an accident such as occurred here.

Other witnesses are called by the plaintiff who practically give testimony similar to that given by Mr. Knapp.

There is this conflict between the witnesses: Practically, the defendant's witnesses say that it is safe practice to put a two-inch cock into a ten-inch pipe, and the witnesses called by the plaintiff say that that is an unsafe and dangerous practice. The witnesses for the defendant, however, agree that such practice would not be safe unless the main was a half inch thick, and all seem to agree that in making a connection like the one in question the thickness at the point where it was proposed to make the tap could not be ascertained except by turning off the water and making an examination, which was not done in this case.

Upon all the evidence, I think it was a fair question of fact as to whether or not the defendant was guilty of negligence in making this tap in the manner in which it did.

The important finding of fact by the referee is No. 3, which is as follows:

"I find that on the 26th day of December, 1901, the city inserted a service cock in the main in Michigan street to supply water from said main to premises near to the plaintiff's said premises, and that in so doing it made a circular opening in a thin portion of said main, the said opening being about two inches in diameter, and thereupon inserted what is known as a corporation cock; that is a cock which screws into the orifice made in the pipe and by which the water could be turned off or on so as to flow into the house connection or be stopped from so flowing. The end of the corporation cock which was screwed into the orifice was tapering in shape; the small end being first inserted and pressure applied to screw the cock in firmly. In inserting the cock, by reason of the thinness of the pipe, the tapering shape of the screw end of the pipe and the force applied in screwing the cock into place, the main was cracked or so weakened that it subsequently and on March 8, 1902, burst, being by reason of its weakening or fracture, unable to withstand the pressure of the water in the main. I find that proper precaution against the bursting of the main, under the circumstances stated, required that a smaller cock should have been inserted in a smaller orifice, or that the pipe should have been strengthened before so large a cock as one two inches in diameter was used, and I find that no precaution was used to strengthen the pipe before inserting the cock. I further find that the work by the city of inserting said cock in the main was negligently, carelessly, and unskillfully done, and that the bursting of the main was the result of such negligence, carelessness, and unskillfullness."

Such finding is fully sustained by the evidence, and it is unnecessary to refer to all of the evidence which supports it. His finding on that issue ought not to be disturbed.

A considerable portion of appellant's brief is devoted to the proposition that in making this connection the city of Buffalo was acting in a governmental capacity and is, therefore, not liable for the negligence of its employés. We think the appellant's contention is not borne out by the authorities. We think the rule in such cases is correctly stated

in Shearman & Redfield on the Law of Negligence (5th Ed.) § 286, where it is said:

"In its proprietary or private character a municipal corporation may engage in enterprises for its own immediate profit, or advantage, as a corporation, although inuring ultimately, of course, to the benefit of the public. Of this character are waterworks to supply water to consumers. * * * In respect to its liability for negligence in the construction and maintenance of such works the corporation is on the same footing with private proprietors and is liable for the negligence of its agents in the management of its business."

To the same effect are Bailey v. Mayor, 3 Hill, 531, 38 Am. Dec. 669, Jenney v. Brooklyn, 120 N. Y. 164, 24 N. E. 274, Dunstan v. New York, 91 App. Div. 355, 86 N. Y. Supp. 562, and Gordon v. Village of Silver Creek, 127 App. Div. 888, 112 N. Y. Supp. 54, affirmed 197 N. Y. ——, 90 N. E. 1159. Numerous other citations might be given from text-books and decisions; but we think it unnecessary to further discuss that proposition.

The appellant raises no question as to the amount of damages suffered by the plaintiff, and we think the findings of the referee in that respect are supported by ample evidence.

It follows that the judgment appealed from should be affirmed, with costs.

Judgment affirmed, with costs. All concur.