## VON LONGERKE et al. v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. April 4, 1912.)

1. WATERS AND WATER COURSES (§ 209*)—INJURIES FROM BROKEN WATER MAIN—SUFFICIENCY OF EVIDENCE.

In an action against a contractor for injuries to a store from water from a city main claimed to have been broken by defendant's negligence in excavating for a building, evidence *held* to sustain a finding that the excavating contract was made with defendant personally, and not with the corporation of which he was president.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 302; Dec. Dig. § 209.*]

2. CORPORATIONS (§ 336*)—LIABILITY OF OFFICERS—DE FACTO CORPORATIONS.

To relieve one charged with having negligently broken a water main in constructing a building from liability on the ground that the work was in fact done under a contract with the corporation of which he was president, at least a de facto corporation must be shown.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1454; Dec. Dig. § 336.*]

3. CORPORATIONS (§ 28*)—DE FACTO CORPORATIONS.

To establish the existence of a de facto corporation, the exercise of corporate powers must be shown, in addition to showing a law under

which the corporation might have been organized and an attempted organization under it.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 70; Dec. Dig. § 28.*]

**4.** MUNICIPAL CORPORATIONS (§ 748*)—WATER MAINS—BREAKING BY THIRD PERSON.

The fact that a city issued a permit to a contractor to make an excavation through the street some eight feet from a water pipe, and that the work was to be done under the direction of the city's chief engineer of sewers, did not make it the city's duty to see that due care was used in doing the work, or make it liable for the contractor's negligence in doing the work; the construction of the excavation not being a nuisance or dangerous per se.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1578; Dec. Dig. § 748.*]

**5.** MUNICIPAL CORPORATIONS (§ 748*)—WATER MAINS—BREAKING—LIABILITY OF CITY.

The fact that a city issued permits for the sinking of shafts from the surface of the street along the line of an excavation, which it authorized a contractor to make, would not make the city liable for negligence of the contractor in constructing the excavation, whereby he broke into a water pipe; such shafts not having contributed to the breaking of the pipe.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1578; Dec. Dig. § 748.*]

**6.** WATERS AND WATER COURSES (§ 209*)—WATER MAINS—BREAKING—SUFFICIENCY OF EVIDENCE.

Evidence, in an action against a city for injuries by the breaking of a water main permitting water to flow into plaintiff's store, *held* to sustain a finding of negligence by the city in not promptly shutting off the water after it had notice of the break.

[Ed. Note.—For other cases, see Water and Water Courses, Cent. Dig. § 302; Dec. Dig. § 209.*]

**7.** WATERS AND WATER COURSES (§ 209*)—WATER MAINS—BREAKING—LIABILITY FOR INJURIES.

A city was bound to use diligence in shutting off the water from a water main after it was notified that the main was broken and was flooding the street.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 302; Dec. Dig. § 209.*]

**8.** MASTER AND SERVANT (§ 315*)—INDEPENDENT CONTRACTOR.

One contracting for the doing of work by an independent contractor is not, as a rule, liable for the contractor's negligence in doing it.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1241, 1244–1253, 1255, 1256; Dec. Dig. § 315.*]

**9.** MASTER AND SERVANT (§ 323*)—INDEPENDENT CONTRACTOR—CONTRACTING DANGEROUS WORK.

While an employer is liable for the negligence of an independent contractor where the thing contracted for is a nuisance or dangerous per se, the construction of a tunnel excavation across a street according to plans which kept the tunnel eight feet from a water main, which was broken by negligently changing the course of the excavation by the contractor, was not a nuisance or dangerous per se, so as to make the one contracting with the independent contractor liable for the latter's negligence in running the tunnel into it.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1264; Dec. Dig. § 323.*]

Ingraham, P. J., dissenting in part.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, New York County.

Action by Justus Von Longerke and another against the City of New York and James Pilkington and others. From a part of the judgment dismissing the complaint as to some of defendants, plaintiffs appeal, and the defendants named appeal separately from judgments against them in favor of plaintiffs and from orders denying their motions for a new trial. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

Montgomery Hare, for plaintiffs.
J. Arthur Corbin, for defendant Pilkington.
Clarence L. Barber, for defendant City of New York.
Frederick Hulse, for defendants Eidlitz.

McLAUGHLIN, J. In 1905, the defendants Eidlitz, as general contractors, were engaged in erecting a large building between Thirty-Fourth and Thirty-Fifth streets, on the east side of Fifth avenue in the city of New York. In carrying out the contract, it became necessary for them, in order to make proper sewer connections with the building to be erected, to dig a tunnel under the roadbed of Fifth avenue parallel to the curb from about the center of the building to be erected to a point some 60 feet south of Thirty-Fourth street. To do this work they sublet a contract to one Byrne, who, in turn, sublet it to the defendant Pilkington. Thereafter the city issued permits for the work, and Pilkington started excavating at the southerly end, and on January 5, 1906, had proceeded about 40 feet, when a large water main which ran down Fifth avenue close to the tunnel broke nearly in front of the plaintiff's store. The water escaping from the main flowed into the street, and a portion of it entered the basement of the plaintiff's store through the cellar wall, injuring and destroying their goods to the extent of several thousand dollars, and prevented one of their sales rooms being used for several months. This action was brought to recover the damages alleged to have been sustained by reason thereof. At the close of the trial the court submitted to the jury five specific questions of fact: (1) Were the plaintiffs free from negligence? (2) Was the city of New York guilty of negligence? (3) Were the defendants Eidlitz guilty of negligence? (4) Was defendant Pilkington guilty of negligence? (5) What was the amount of damage, if any, suffered by the plaintiffs? The first four questions were answered in the affirmative, and the fifth, $7,148.99. The court thereupon directed a verdict for this sum against the defendants city of New York and Pilkington, and dismissed the complaint against Eidlitz & Son. To such direction appropriate exceptions were taken by the city and Pilkington, and the plaintiffs also excepted to the dismissal of the complaint as to Eidlitz & Son. Judgment was thereafter entered in conformity with the verdict directed, and the plaintiffs appeal from so much of it as dismissed the complaint as to Eidlitz & Son, and the city of New York and Pilkington separately appeal from the judgment and also from orders denying their respective motions for a new trial.

I am of the opinion that the disposition made by the trial court is correct. First, as to the defendant Pilkington: There is ample evidence to support the finding that the break in the water main was caused by the negligent manner in which the tunnel was constructed. The city gave its permit to construct, according to a plan, a tunnel, which was to be between four and five feet wide, of about the same height, and to run parallel to and about four feet westerly of the easterly curb of the avenue. Had this plan been followed, the tunnel would not, at any place, have been within 8 feet of the main which was broken. The plan was not followed. It seems to have been abandoned and the tunnel dug some 10 feet farther to the west, which brought it under one large water main which should have been parallel to it, and according to the plaintiffs' evidence, partially under the second main, which broke. There can be little doubt, when all of the evidence bearing on the subject is considered, that the breaking of the main was caused by the failure to follow the plan. The break occurred just about where the tunnel passed under the main which broke, and there was only about 6 inches of rock intervening between the top of it and the main. The excavating was done by means of blasting, and close to the place where the pipe broke there was a hole in the roof of the tunnel; but just how that was caused does not appear. Undoubtedly the breaking of the main was caused either by blasting, or else the removal of the rock which supported it, or both.

[1] But the appellant Pilkington insists that the judgment is erroneous as to him because the work was done not by him, but by the Pilkington Construction Company. He testified that the Pilkington Construction Company is a domestic corporation, of which he is the president, treasurer, and one of the directors, and that he, as its president, did the excavating under a contract made by it and not by himself individually. The court left it to the jury to say whether it was Pilkington personally, or the Pilkington Construction Company, which had made the contract and done the work. The jury found it was Pilkington personally, and the evidence is sufficient to sustain the finding. The contract with Byrne, in so far as it was evidenced by any writing, was a letter addressed to the Pilkington Construction Company; but there was no documentary proof to show that any company by that name had ever been incorporated, which is a suspicious circumstance in and of itself. Pilkington testified there was such a corporation; that its capital stock was $2,500; that he was the owner of 10 shares; that it had an office in a private residence, but there was nothing to indicate by sign or otherwise that it had an office there; that meetings of the stockholders were occasionally held at different places, but he could not tell who they or the incorporators were; and that the corporation had no bank account, but all of its funds were deposited in his personal account. It also appeared that the permit from the city, by which dynamite for blasting was stored while the work was being carried on, was issued to Pilkington personally, and the license issued to the persons who did the blasting, which it was the contractor's duty to see before permitting them to work, recited that they were employed by Pilkington. He admitted that he sometimes did such work on his own

account, and the city officials who had charge of issuing the permits for excavating testified that Pilkington called upon him in regard to the tunnel before the accident and then stated that he had the contract.

[2] Before he could be relieved of responsibility, it was incumbent upon him to show that at least a de facto corporation existed and was the one performing the work. There was no evidence of any bona fide attempt on the part of the alleged stockholders to comply with the statute in creating a corporation, except Pilkington's general statement that the corporation was duly organized. Something more than this had to be shown.

[3] In order to establish the existence of a de facto corporation, it is necessary to show not only that there is a law under which the corporation might be organized, and an attempt to organize it, but that corporate powers have been thereafter exercised. Methodist Church v. Pickett, 19 N. Y. 482; Emery v. De Peyster, 77 App. Div. 65, 78 N. Y. Supp. 1056; Van Buren v. Reformed Church, 62 Barb. 495. Not only this, but the jury was not bound to believe Pilkington's statement that a corporation had been formed, even though it were not contradicted. He was an interested witness, and this, taken in connection with the other evidence, especially the absence of documentary proof, was sufficient to justify the jury in disregarding it. Hull v. Littauer, 162 N. Y. 569, 57 N. E. 102.

Second, as to the city of New York: Its liability is based upon two claims: (a) That it did not see to it that the plan was followed and that the work of excavation was done in such a way as to prevent injury to third parties; and (b) that it did not use proper diligence in turning off the water after it had been given notice of the break in the pipe.

[4] The judgment could not be sustained upon the first ground, because there was no duty resting upon the city to supervise the work. It is true the city through the bureau of sewers, issued a permit to make the excavation; but the permit was to construct a tunnel running parallel to, and about four feet westerly from, the easterly curb of the avenue, and that the work was to be done under the direction of the chief engineers of sewers. But this did not obligate the city to see to it that due care was used in the prosecution of the work itself, nor render it liable for the negligence of the contractor. The thing authorized by the city was not a nuisance, nor was it dangerous per se. Had the plan been followed, the pipe would not have been broken, and the damages which resulted were by reason of the contractor's failure to follow it, of which the city had no notice. Had the city issued a permit for a nuisance, or for the doing of a thing eminently dangerous in itself, such as an obstruction in the street or setting off fireworks in a public place where a large number of people were assembled, then it might be held liable by reason of damages resulting therefrom. Parks v. City of New York, 111 App. Div. 836, 98 N. Y. Supp. 94, affirmed 187 N. Y. 555, 80 N. E. 1115; Godfrey v. City of New York, 104 App. Div. 357, 93 N. Y. Supp. 899, affirmed 185 N. Y. 563, 77 N. E. 1187; Speir v. City of Brooklyn, 139 N. Y. 6, 34 N. E. 727, 21 L. R. A. 641, 36 Am. St. Rep. 664; Cohen v. Mayor, 113 N. Y. 532, 21 N. E. 700, 4 L. R. A. 406, 10 Am. St.

Rep. 506.  But the rule fixing liability in such cases has no application where the act for which the city gives a permit is, in itself, entirely proper and safe, and from which no injury could result except for the negligence of the person doing it.  Cohen v. Mayor, supra; Masterton v. Village of Mt. Vernon, 58 N. Y. 391;  De Agramonte v. City of Mt. Vernon, 112 App. Div. 291, 98 N. Y. Supp. 454.  The permit was, in effect, to do an act not unlawful.  Crowley v. Rochester Fireworks Co., 183 N. Y. 353, 76 N. E. 470, 3 L. R. A. (N. S.) 330, 5 Ann. Cas. 538.  It was given by authority, pursuant to an ordinance, and merely authorized the excavation to be done in a "careful, prudent and lawful manner."  Village of Port Jervis v. First National Bank, 96 N. Y. 550.  As was said in De Agramonte v. City of Mt. Vernon, supra:

"It is quite well settled that a municipal corporation is not liable for the acts of its licensees unless it is shown that they were authorized to perform an act dangerous in itself.  *  *  *  Here, there is nothing to show that the authorized act was intrinsically dangerous; on the contrary, the danger arose from the negligent manner in which the licensees performed the act."

[5]  Nor does the fact that the city reserved to itself the right to direct the work through its chief engineer of sewers change the rule, because, as a matter of fact, he never attempted to direct it (Uppington v. City of N. Y., 165 N. Y. 222, 59 N. E. 91, 53 L. R. A. 550), or because it issued permits for the sinking of shafts from the surface of the street at various points along the line of the tunnel, for these shafts in no way contributed to the breaking of the pipe.  The city's interest was properly protected because a recovery was not permitted upon this ground.

[6]  The trial court did not submit to the jury the question of the city's negligence in giving the permit or in failing to properly supervise the work.  On the contrary, the only question submitted to the jury, so far as the city was concerned, was whether it was negligent in failing to promptly turn off the water after it had notice of the break in the pipe, and upon this branch of the case I think there is ample evidence to sustain the finding against it.  The break was discovered about 5 o'clock in the afternoon, when the department of water supply having charge of that part of the city was notified.  A large volume of water was then flowing into the street, and it was not stopped until about 1:30 o'clock the next morning.  In the meantime streets for a number of blocks immediately adjacent to the break were flooded to a depth of several inches, and plaintiffs' premises were flooded, doing the damage complained of.  Attempt is made to excuse the delay of 8½ hours on the part of the city in shutting off the water by showing there were six water mains under Fifth avenue at this point, and it was impossible to determine which pipe was broken; considerable time being lost in closing the gates in wrong mains.  But this explanation was not satisfactory to the jury, and it could not very well have been when the fact is considered that no attempt was made to close any of the gates until about 8 o'clock, and then nothing was accomplished until after the arrival (11:30 p. m.) of an engineer in the department of water supply, who, by a simple

test, performed on a fire hydrant, discovered in which main the break was located.

[7] The city was under a legal obligation to use diligence in shutting off the water, and for its failure to do so was liable to persons suffering damage by reason thereof. Messersmith v. City of Buffalo, 138 App. Div. 427, 122 N. Y. Supp. 918; Dunstan v. City of New York, 91 App. Div. 355, 86 N. Y. Supp. 562; McAvoy v. Mayor, 54 How. Prac. 245; Dillon on Municipal Corporations (5th Ed.) § 1670.

[8, 9] Third, as to the defendants Eidlitz: The finding of the jury that the damage sustained by the plaintiffs was due to their negligence is against the evidence, and for that reason the court properly dismissed the complaint as to them. There is absolutely no evidence that they, or their servants, were in any way negligent. They took no part in the excavating and never attempted to supervise or direct what was done in any way. They had a right to sublet the contract to a competent person, and the evidence shows that the subcontractor was such. Pilkington was an independent contractor, and they could not be made liable for his negligence. Plaintiffs' counsel recognizes this rule, but contends that the case comes within the exception, which is that liability cannot be avoided where the thing contracted to be done is a nuisance or dangerous per se. This contention is undoubtedly true; but, as above shown, the excavation was not work of such character. It was not a nuisance, not dangerous per se. Had Pilkington followed the plan in making the tunnel, it would not, at any place, have come within eight feet of the pipe which was broken and would have been at least two feet east of the intervening pipe. The defendants Eidlitz are therefore not liable for Pilkington's negligence. Uppington v. City of New York, supra; Berg v. Parsons, 156 N. Y. 109, 50 N. E. 957, 41 L. R. A. 391, 66 Am. St. Rep. 542; Herrington v. Village of Lansingburgh, 110 N. Y. 145, 17 N. E. 728, 6 Am. St. Rep. 348.

Finally, as to the damages: I think there was an abundance of evidence to sustain the jury's finding on that subject, and I am also of the opinion the extra allowance of costs was properly granted.

The judgment and orders appealed from, therefore, are affirmed, with costs to the plaintiffs against the appellants the city of New York and Pilkington, and with costs to the defendants Eidlitz against the plaintiffs.

LAUGHLIN, MILLER, and DOWLING, JJ., concur.

INGRAHAM, P. J. I concur except as to the city of New York, and as to the city I think there should be a new trial.