OPINION OF THE COURT
Delores J. Thomas, J.
Respondent Five Bay Realty Corporation moves this court for summary judgment dismissing this action against it as respondent on the basis that it was not named or served in the foreclosure proceeding in Supreme Court and therefore its rights to possession pursuant to an unexpired lease were not extinguished.
Petitioner opposes the motion arguing that Five Bay was dissolved by the Secretary of State for nonpayment of taxes and therefore there was no need to name it or serve it in the Supreme Court action, as it was nonexistent; alternatively petitioner alleges through its attorney’s affirmation that Five Bay had notice of the proceeding since its president, Steven Stiegelfest, was a principal of 5620 Realty Corp., the prior owner of the subject premises (which was named in the Supreme Court proceeding) and was also named in his individual capacity as a defendant in the Supreme Court action. Counsel specifically argues that because Five Bay and 5620 Realty shared the same business address, designated the same law firm as their agent for service and both used the same law firm to file the deed (for 5620 Realty) and lease (for Five Bay), Five Bay had actual and constructive knowledge of the Supreme Court action and could have intervened in that action to protect its interest if it had any. Petitioner further argues in opposition to the summary judgment motion that as the 1991 lease between the then owner Eastman Associates and Five Bay was signed prior to Five Bay’s incorporation, the lease was void ab initia thereby making Five Bay at best a month-to-month tenant and therefore not a necessary party to the foreclosure action.
The Undisputed Facts
On June 28, 1991 Five Bay executed a lease for the premises known as 5620 Clarendon Road, Brooklyn, New York, with the owner Eastman for a term of 30 years. The lease commenced on August 1, 1991. On or about July 2, 1991 Five Bay became incorporated (four days after the lease was executed). In or about July 1992 the premises were sold by Eastman to 5620 Realty. On or about August 12, 1992 the 30-year lease was recorded. Five Bay was dissolved June 27, 2002 by the Secretary of *212 State for failure to pay appropriate taxes. In or about September 24, 2002, a judgment of foreclosure and sale was entered in respect to the premises and following a sale, Rockaway Improvement, LLC purchased the premises on or about February 26, 2004. On February 20, 2003 Five Bay sublet the premises to Danco Transmission Corp. pursuant to a five-year term lease. On August 24, 2004 the dissolution proceeding by the Secretary of State against Five Bay was annulled and the existence of the corporation revived.
The undisputed evidence also shows Five Bay was not named or served in the foreclosure action brought in Supreme Court.
Discussion
The arguments presented herein raise the following legal issues which must be resolved in order to determine Five Bay’s entitlement to summary judgment:
(1) Was the lease between Eastman and Five Bay void ab initia due to Five Bay’s incorporation subsequent to the date the lease was signed?
(2) If the lease is valid was it extinguished by the foreclosure action?
The court is mindful of petitioner’s counsel’s argument regarding Five Bay’s noncorporate identity resulting from the Secretary of State’s proclamation of dissolution. However, those arguments have become moot due to Five Bay’s reinstatement. The law is clear, the Department of State may issue a proclamation which dissolves a corporation on the basis of its failure to pay tax assessments (Tax Law § 203-a [7]). The statute specifically provides that once the delinquent taxes are paid such payments will have the “effect of annulling all of the proceedings theretofore taken for the dissolution” of the corporation, and the corporation “shall thereupon have such corporate powers, rights, duties and obligations as it had on the date of the publication of the proclamation, with the same force and effect as if such proclamation had not been made or published” (Tax Law § 203-a [7]). Courts have long held that corporate transactions which occurred during a period of dissolution are retroactively validated because the corporation’s status and its corresponding powers, rights, duties, and obligations have been reinstated nunc pro tune (St. James Constr. Corp. v Long, 253 AD2d 754 [2d Dept 1998]).
In reaching its decision on the summary judgment motion, the court will first deal with the second issue raised herein, i.e., the need to name and serve Five Bay in the foreclosure action.
*213 RPAPL 1311 requires the plaintiff in a mortgage foreclosure action to join, as a party defendant, any person “whose interest is claimed to be subject and subordinate to the plaintiffs lien.” Under the statute, these necessary parties include “[e]very person having an estate or interest in possession ... in the property as tenant in fee,” as well as all junior lienholders (RPAPL 1311 [1]). Thus, tenants are clearly necessary parties to a foreclosure action (see 6820 Ridge Realty v Goldman, 263 AD2d 22 [2d Dept 1999]; Polish Natl. Alliance of Brooklyn, U.S.A. v White Eagle Hall Co., 98 AD2d 400 [2d Dept 1983]; Flushing Sav. Bank v CCN Realty Corp., 73 AD2d 945 [2d Dept 1980]).
The rationale for joinder of tenants and junior lienholders “derives from the underlying objectives of foreclosure actions—to extinguish the rights of redemption of all those who have a subordinate interest in the property and to vest complete title in the purchaser at the judicial sale” (Polish Natl. Alliance of Brooklyn, U.S.A. at 404).
Thus, the absence of a necessary party in a foreclosure action leaves that party’s rights unaffected by the judgment and sale, and the foreclosure sale may be considered void as to the omitted party (see 6820 Ridge Realty v Goldman, supra; Polish Natl. Alliance v White Eagle Hall Co., supra; see also, Marine Midland Bank v Freedom Rd. Realty Assoc., 203 AD2d 538 [2d Dept 1994]).
In 6820 Ridge Realty v Goldman, the after foreclosure purchaser of an apartment building sought to maintain an action for strict foreclosure pursuant to RPAPL 1352 to cut off the leasehold rights of commercial tenants who were not joined as defendants in the original foreclosure suit. The facts were undisputed in that case that the defendant doctors held a 40-year lease to the foreclosed premises and had not been named or served in the original foreclosure action. The defendants argued that the foreclosure sale had not extinguished their rights to remain in possession pursuant to their lease because they had not been named and served. The plaintiffs conceded that defendants’ leasehold rights had not been terminated in the original foreclosure action but argued it could maintain a strict foreclosure action to now cut off defendants’ possessory rights. The appellate court in reversing the trial court agreed. The appellate court held that a tenant in possession pursuant to a lease which is subordinate to the mortgage, but who was not made a party to the foreclosure action, cannot be dispossessed *214 by the purchaser at the foreclosure sale, but, in such a case, the purchaser of the foreclosed property had two potential remedies—the commencement of a strict foreclosure action pursuant to RPAPL 1352, or a reforeclosure action pursuant to RPAPL 1503.
The court notes petitioner submitted no affidavit of fact from anyone with personal knowledge so that petitioner’s attorney’s affirmation as to any factual issues including but not limited to counsel’s argument that petitioner is a bona fide purchaser has no probative value. Thus the affirmations of Mr. Stern are accepted only on those issues that are strictly issues of law.
Petitioner’s argument, even if true, that Five Bay had actual and constructive notice of the foreclosure is not persuasive. Actual or constructive notice alone is insufficient to bind Five Bay with the results of the foreclosure action. Five Bay would have had to have been named and served as a party in the foreclosure action to have its rights affected by the judgment therein (see Scheidt v Supreme Woodworking Co., 212 App Div 179 [2d Dept 1925]). Moreover, the plaintiff in the foreclosure action could not rely upon the use of the fictitious names of “John Doe or Jane Doe” to bind Five Bay because a plaintiff may only resort to such fictions when the true name of a party is unknown to plaintiff and cannot be ascertained (CPLR 1024). Notably, the lease between Five Bay and Eastman was recorded and plaintiff in the foreclosure action was therefore placed on constructive notice of said lease (see Andy Assoc. v Bankers Trust Co., 49 NY2d 13 [1979]; Reynolds v Springer Serv. Sta., 151 AD2d 466 [2d Dept 1989]; Stolts v Tuska, 76 App Div 137 [1st Dept 1902]).
In the case at bar, it is clear that, if the 30-year lease held by Five Bay is a valid lease, then Five Bay was without doubt a necessary party to the foreclosure action in Supreme Court and since its right to remain in possession was not extinguished by the foreclosure sale, petitioner may not maintain the present summary holdover as a valid lease exists.
The court will now address the issue of the lease’s validity.
Petitioner herein also argues that the 30-year lease between Eastman and Five Bay was void ab initia because, on June 28, 1991 when the lease was executed, Five Bay was not a corporation since its certificate of incorporation was not filed until four days later on July 2, 1991. Respondents argue in essence that it was either a de facto corporation or that it subsequently ratified the lease and that at worst the lease was voidable and not void ab initia.
*215 To support its argument petitioner relies upon the holding in Kiamesha Dev. Corp. v Guild Props. (4 NY2d 378 [1958]). In Kiamesha Dev. Corp. v Guild Props., the premises in question were sold to an individual, David Baum, at a tax sale held on July 26, 1944 for unpaid taxes in the year of 1942. Thereafter on August 23, 1944 the County Treasurer issued a tax certificate to the defendant Guild Properties, Inc. On September 4, 1947 Guild Properties was issued a tax deed which was recorded on September 9, 1947. At the time the defendant was issued the certificate (Aug. 23, 1944) there was no assignment to it from David Baum and there was no such corporation as Guild Properties, Inc. (the certificate of incorporation of Guild dated August 25, 1944 showed the certificate was actually filed with the Department of State on September 5, 1944). Thus defendant claimed that it was a de facto corporation. In rejecting this claim, the Court held that there was no evidence in the record to support a de facto corporation on August 23, 1944. Specifically the Court stated that “[w]ithout any exercise of corporate functions, without any colorable attempt to comply with the statutes governing incorporation before the issuance of the tax certificate, without any certificate of incorporation having been even prepared or acknowledged, it cannot be said that Guild Properties, Inc., was a de facto corporation on that date [i.e., Aug. 23, 1944]” (at 388).
The Court further held since defendant was neither a corporation de jure nor de facto it could not take title to real or personal property or acquire rights by contract or otherwise incur debts or other liabilities either in contract or tort, sue or be sued (Kiamesha Dev. Corp. v Guild Props., supra at 384).
The instant case is distinguishable from Kiamesha Dev. Corp. v Guild Props. in that Five Bay was a de facto corporation. The court’s reasoning will be more fully discussed below.
Section 403 of the Business Corporation Law provides that “[u]pan the filing of the certificate of incorporation by [sic] the department of state, the corporate existence shall begin . . . .” Nonetheless the doctrine of de facto corporation has been utilized to recognize such corporate status for legal purposes (see generally Von Longerke v City of New York, 150 App Div 98 [1st Dept 1912], affd 211 NY 558 [1914]; Stevens v Episcopal Church History Co., 140 App Div 570 [1st Dept 1910]; Bankers Trust Co. of W. N.Y. v Zecher, 103 Misc 2d 777 [Sup Ct, Monroe County 1980]; see also Kiamesha Dev. Corp. v Guild Props., supra).
*216 It has long been held that in order to establish the existence of a de facto corporation it is necessary to show that there is a law under which the corporation might be organized, an attempt to organize the corporation, and an exercise of corporate powers thereafter (id,.). It is said that without a “colorable attempt” to comply with the statutory requirements there can be no de facto corporation (Kiamesha Dev. Corp. v Guild Props., supra at 388), but
“where there has been an attempt in good faith to comply with the requirements of the law with respect to filing a certificate of incorporation and a certificate has been filed in one or more of the places required by law and there has been user of the corporate name, the corporation will be deemed a corporation de facto” (Stevens v Episcopal Church History Co., supra at 578-579).
In conjunction with the doctrine of de facto corporation it is also a familiar principle that a corporation may be bound on a contract made in its name by its promoters prior to the completion of incorporation, where the corporation subsequently adopts the contract by express ratification or by acceptance of benefits referable to it (Bankers Trust Co. v Zecher, supra at 780, citing Matter of Reif [Williams Sportswear], 9 NY2d 387, 392 [1961]; Morgan v Bon Bon Co., 222 NY 22, 26-27 [1917]; Matter of Planz [Sees], 282 App Div 552, 553 [3d Dept 1953]).
In Bankers Trust Co. of W. N.Y. v Zecher (103 Misc 2d 777 [Sup Ct, Monroe County 1980]), plaintiff, as a lender, granted a security interest in the corporation’s (Roseberry Inn, Inc.) equipment, brought suit against subsequent purchasers of the equipment alleging conversion and unjust enrichment. In response to the lender’s motion for summary judgment the purchasers argued that the lender acquired no interest in the equipment because the corporation was not a legally existing entity at the time the security agreement was entered into as it had not yet filed a certificate of incorporation with the Secretary of State. The purchasers argued that the de facto doctrine is no longer viable in New York State following a 1963 amendment to section 403 of the Business Corporation Law which made the filing of the certificate of incorpoi^itidn conclusive, rather than presumptive, evidence that a correlation has been formed. The court in rejecting this argument found that the legislative history indicated that this section was intended instead to codify the de facto doctrine in New York case law and *217 the doctrine had been used by at least one court (Conway v Samet, 59 Misc 2d 666 [Sup Ct, Nassau County 1969]) following the amendment.
The court in Bankers Trust found the entity in question (Roseberry Inn, Inc.) to be a de facto corporation and, alternatively, if not a de facto corporation, it had subsequently adopted the security agreement by accepting the benefits referable to it from the lender.
In the case at hand only four days elapsed between the execution of the lease and Five Bay’s incorporation; thus, Five Bay not only attempted but complied with New York State’s laws for incorporation. Additionally, the actual terms of the lease did not commence until Five Bay was incorporated; the lease was recorded over one year after its execution thereby giving Five Bay and Eastman ample time to repudiate it if either chose to. Furthermore, at a minimum over the year that Eastman retained ownership of the property after executing the lease, Five Bay presumably paid rent to Eastman and exercised control over the demised premises. Over the course of the years after 5620 Realty obtained ownership of the property, Five Bay continued its lease of the property and its control as evidenced by its sublet to Banco. For all these reasons the court finds that Five Bay was a de facto corporation when the lease was executed and, even if it were not a de facto corporation, Five Bay subsequently adopted the lease by its actions.
The court finds that the 30-year lease between Eastman and Five Bay is valid thereby giving Five Bay a possessory right to the subject premises requiring it to be named and served in any mortgage foreclosure proceeding in order to extinguish its rights.
Additionally, the court again notes that Five Bay’s lease had been recorded and therefore the plaintiff in the Supreme Court action was on notice of possible encumbrances to title and that there was another party that should have been named and served in the action. There has been no introduction of an affidavit of fact from anyone with personal knowledge to explain why Five Bay was not named and served in the foreclosure action. As previously pointed out by the court, any statements by the affirmant attorney are not probative as he has not established he has any personal knowledge of any pertinent facts on this issue.
Since the court has determined that the lease between Eastman and Five Bay was not void ah initia, but is valid and *218 unexpired, and as it is undisputed that Five Bay was not a party to the foreclosure action, its right to possession of the demised premises was not extinguished; therefore, petitioner may not maintain this summary holdover proceeding.
Accordingly, respondent Five Bay’s motion for summary judgment is granted. The petition and notice of petition are dismissed.