(111 App. Div. 836)

PARKS v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. March 16, 1906.)

1. MUNICIPAL CORPORATIONS—DEFECTIVE SIDEWALK—PERSONAL INJURIES—
    EVIDENCE—QUESTION FOR JURY.
      In an action against a city for death alleged to have been caused by the defective condition of a bridge temporarily erected over an excavation under the sidewalk, evidence *held* sufficient to justify submission to the jury of the question of defendant's negligence.
      [Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, § 1747.]

2. TORTS—JOINT TORT FEASORS—LIABILITY—ENTRY OF JUDGMENT AGAINST ONE.
      Where joint tort feasors were jointly sued, and a judgment against both was on appeal reversed as to one, the entry of judgment against the other did not preclude plaintiff from afterward proceeding against the one as to whom the judgment was reversed.
      [Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Torts, § 29.]
      Clarke, J., dissenting.

Appeal from Trial Term, New York County.

Action by William J. Parks, as administrator, against the city of New York and others. From a judgment for plaintiff, the city appeals. Affirmed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, INGRAHAM, CLARKE, and HOUGHTON, JJ.

Theodore Connoly, for appellant.
Joseph H. Choate, for respondent.

McLAUGHLIN, J. There have been two trials of this action. On the first the plaintiff had a verdict against the city of New York and the defendants Miller & Holme for $22,000, but on appeal the judgment was reversed as to the city, and a new trial ordered, and also reversed as to Miller & Holme unless the plaintiff stipulated to reduce the verdict to $15,000, in which case the judgment was affirmed. Coolidge v. City of New York, 99 App. Div. 175, 90 N. Y. Supp. 1078. The stipulation was made and the verdict accordingly reduced against Miller & Holme to $15,000, upon which judgment was entered. The second trial was against the city alone, and resulted in a verdict against it for $25,000, which upon motion of the defendant was reduced to $15,000, and from the judgment entered for that amount, as well as from an order denying a motion for a new trial, the city appeals.

The evidence on the second was substantially the same as that offered upon the first trial, except that additional evidence was given tending to establish that the city had actual notice of the defective condi-

tion of the sidewalk before the accident occurred. The facts relating to the accident, the construction of the bridge or temporary sidewalk, its weakness and final collapse, are fully set out in the opinion delivered on the former appeal, and therefore it is unnecessary to restate them, or refer to any but the additional bearing on those subjects. On that appeal this court held (Mr. Justice INGRAHAM writing the opinion) that there was "evidence from which the jury could find that the braces to make such a structure safe were omitted, and that it was the absence of those braces to make such a structure safe that caused the structure to fall." The reversal of the judgment so far as the city was concerned was upon the ground that it did not have sufficient notice of this defect. It then appeared that the city did not have actual notice of the defective condition of the bridge until the morning of the day the accident occurred, and this was held to be insufficient to charge the city with a failure to take precautions to strengthen the bridge. On the trial, which resulted in the judgment now appealed from, it appeared that the city had actual notice of the defects several days before the accident occurred. The witness Baxter, a policeman stationed in that locality at and immediately prior to the accident, who was not a witness on the first trial, testified, in substance, that the bridge from the time it was constructed, which was nearly a month before the accident, was shaky, and vibrated when walked upon; that five or six days prior to the accident one Hess called his attention to its unsafe condition, and advised him to report it to the station house, and at the same time said if he did not make such report he would do so himself; and he is corroborated by the witness Hess, who testified that he called Baxter's attention to the unsafe condition of the bridge in case a parade should pass there. Baxter further testified that, after his attention had been called to the bridge by Hess, he did, several days before the accident, make an oral report at the station house, to the captain in charge, that the bridge was unsafe in case a parade passed there. He also testified that he made a written report on the day of the accident, and about 18 hours before it occurred. This report was made at 12:20 a. m., and the accident occurred about 6 p. m.

The testimony was uncontradicted. It is severely criticised by appellant's counsel, but its credibility was for the jury, and, if believed by them, was sufficient to justify a finding that the city had actual notice in time to remedy the defect, and this irrespective of whether or not Baxter made his oral report. Notice to Baxter, a police officer, was notice to the city. Rehberg v. Mayor, 91 N. Y. 137, 43 Am. Rep. 657. Notice to any officer charged with police powers, irrespective of his rank or grade, is notice to the city. Johnson v. Poughkeepsie, 29 App. Div. 16, 51 N. Y. Supp. 190. Not only this, but the city had actual notice of the defects from the time the bridge was built until it collapsed. The witness Hamel, an inspector, saw it on several occasions. He was the officer detailed by the defendant's building department to, and he actually did, make several inspections. This was actual notice to the city that the bridge was defective by reason of the absence of the braces referred to. Another fact appearing upon the second, which did not appear upon the first,

trial, was that the defendant had workmen ready to respond immedi-ately to the call of the police in case of emergency, to remedy defects in structures of this character; and it was a question for the jury, in view of this fact, whether the city performed its full duty in not re-sorting to this means of strengthening the bridge after the actual notice was given by Baxter on the morning of the day of the accident.

I do not think it can be said that this verdict is against the weight of evidence, either as to the defective condition of the bridge, or as to the city's having actual notice a sufficient time prior to the acci-dent to have enabled it to have remedied the defects. But, irrespec-tive of any notice, the city was liable, inasmuch as the jury found the bridge was defective, and its verdict was based upon evidence which fairly sustained the same. The law imposes upon a municipality the duty of seeing that its streets and sidewalks are kept reasonably safe for public travel. Here the city issued a permit to the owner of the land abutting upon the street to excavate beneath the sidewalk, which necessitated the removal of the sidewalk itself, and the erection of a temporary bridge in place thereof. Having issued this permit, there was an absolute duty imposed upon the city to see to it that the por-tion of the street interfered with by reason of the permit was kept reasonably safe, or that a person using it was seasonably warned that he could not rely upon the presumption that it was safe for use. The city, by issuing the permit, became a joint actor with the owner of the land in the erection of the bridge, and by reason thereof became re-sponsible for any neglect or fault of the owner in properly erecting the bridge. The principle is precisely the same as if an obstruction had, under a permit, been placed in the street. In Cohen v. Mayor, 113 N. Y. 532, 21 N. E. 700, 4 L. R. A. 406, 10 Am. St. Rep. 506, the injury was caused by a wagon which had been placed in a public street under a permit granted by the city, and it was held that under such circumstances the city was liable "the same as if it had itself maintained the nuisance; for the owner of the wagon was nothing more than an agent, through whom the defendant did this unlawful act." In Spier v. City of Brooklyn, 139 N. Y. 6, 34 N. E. 727, 21 L. R. A. 641, 36 Am. St. Rep. 664, the plaintiff was injured by the discharge of fireworks in a public street, and it was held that if the city directed or authorized the discharge of the fireworks which caused the injury complained of it was liable; that the mayor had, by permit, authorized the fireworks to be discharged in the street, under the pro-visions of an ordinance which gave him authority to grant such per-mit, and therefore the city was liable.

A similar question was before the court in the recent case of Landau v. City of New York, 180 N. Y. 48, 72 N. E. 631, 105 Am. St. Rep. 709, where the same rule was applied; and in Godfrey v. City of New York, 104 App. Div. 357, 93 N. Y. Supp. 899, where a pile of stones had been deposited in the street the day previous to the accident, it it was held that, even though the lapse of time was not sufficient to justify a finding that the city had actual notice of that fact, never-theless it was negligent in not knowing the condition of the street and removing the obstruction, inasmuch as the stones were piled there

under a permit issued by the city. Mr. Justice INGRAHAM, delivering the opinion of the court, after citing numerous cases, said:

"These cases establish a proposition that where a municipal corporation gives a permit to obstruct a street, an absolute duty is imposed upon the corporation to see to it that the obstruction is so protected and guarded that a person using the street, and entitled to rely upon the presumption that it is safe for use, will be warned of the danger in time to avoid injury. By giving the permit, it thereby becomes a joint actor with the licensee in creating the obstruction, and the city thereby becomes responsible for any neglect or default of the licensee in properly guarding, so that persons using the street will not be exposed to unnecessary danger."

Finally, it is urged that the judgment should be reversed because the plaintiff, by the entry of the judgment against Miller & Holme, elected to proceed against them alone, and thereby abandon his cause of action against the city. I do not understand this to be the law. A plaintiff may sue all joint tort feasors jointly, or each of them separately. If he brings separate actions, and has separate recoveries, the satisfaction of one judgment satisfies them all. Livingston v. Bishop, 1 Johns. 290, 3 Am. Dec. 330; Thomas v. Rumsey, 6 Johns. 26; Breslin v. Peck, 38 Hun, 623; Russell v. McCall, 141 N. Y. 437, 36 N. E. 498, 38 Am. St. Rep. 807; Palmer v. N. Y. News Publishing Co., 31 App. Div. 212, 52 N. Y. Supp. 539. Here the plaintiff elected to proceed against the city and Miller & Holme jointly, and the first trial, as we have already seen, resulted in a judgment against them jointly. The fact that that judgment was reversed as to the city and a new trial ordered did not, because the plaintiff saw fit to reduce the judgment as to Miller & Holme instead of taking a new trial, destroy his cause of action against the city. He could still retain the judgment against Miller & Holme, and continue the action, as he did, against the city. A satisfaction of either judgment, however, would be a satisfaction of both. Other errors are suggested, but they do not seem to require consideration here.

The judgment and order appealed from, therefore, should be affirmed, with costs.

O'BRIEN, P. J., concurs. INGRAHAM and HOUGHTON, JJ., concur in result. CLARKE, J., dissents.