MILLIE METZROTH, as Administratrix, etc., of CHARLES P. METZROTH, Deceased, Appellant, *v.* THE CITY OF NEW YORK and Others, Respondents, Impleaded with 742 SEVENTH AVE. CORPORATION and Others, Defendants.

First Department, March 13, 1925.

Negligence — action for death of plaintiff's intestate who was killed when bridge erected over sidewalk in city of New York during demolition of building fell on him — lessor of building under long term lease not liable — permit to erect bridge was granted by bureau of highways of borough president's department — supervision of erection and maintenance of bridge was, under Building Code, § 190, with bureau of buildings and city is not responsible for negligence of that department — allegations that bureau of buildings had notice of unsafe and dangerous condition and overburdening of bridge not sustained — evidence, mostly by plaintiff's witnesses on cross-examination that bridge appeared to be substantially constructed and not unsafe, was not improperly received in favor of defendants who erected bridge — said defendants, who had no knowledge that bridge was to be overburdened, are not liable.

The lessor of a building in the city of New York, leased on a long term lease under which the lessee was required to make certain improvements and alterations, is not liable for the death of the plaintiff's intestate who was killed while walking

along the sidewalk in front of the building when a bridge, erected over the sidewalk with the permission of the bureau of highways for the purpose of protecting pedestrians during the demolition of the building, fell on plaintiff's intestate and killed him.

The city of New York is not liable for the death of plaintiff's intestate since it appears that as soon as the permit to erect a bridge was granted by the bureau of highways of the borough president's department, the supervision and control of the erection and maintenance of the bridge fell under the jurisdiction of the bureau of buildings under section 190 of the Building Code for whose negligence, if any, the city is not liable.

Furthermore, the allegations by the plaintiff that after the erection of the bridge the city permitted it to exist, with notice of its unsafe and dangerous condition and of the fact that it was overburdened by materials placed upon it, is not sustained by the evidence.

It was not error for the court to receive in evidence, on behalf of the defendants who erected the bridge, testimony by plaintiff's expert witnesses given on cross-examination, mostly without objection or exception on the part of the plaintiff, that the bridge appeared to be substantially constructed and safe.

Since the bridge was of sufficient strength to bear the burden reasonably expected to be placed upon it, and since the defendants who erected it had no knowledge or information that it was the intention of those who were to use it to overburden the bridge with extra loads, those defendants are not liable.

APPEAL by the plaintiff, Millie Metzroth, from a judgment of the Supreme Court in favor of the defendant, The City of New York, entered in the office of the clerk of the county of New York on the 10th day of August, 1921, upon the dismissal of the complaint by direction of the court at the close of the plaintiff's case as to the defendant The City of New York; also from a judgment in favor of the defendants Jacob Volk House Wrecking Co., Inc., and Jacob Volk, entered in said clerk's office on the 12th day of July, 1921, upon the verdict of a jury; also from an order of the Supreme Court, entered in said clerk's office on the 7th day of July, 1921, granting said defendants' motion for costs upon the verdict of the jury; also from a judgment of the Supreme Court in favor of the defendant Garfield National Bank of the City of New York, entered in said clerk's office on the 21st day of December, 1921, upon the dismissal of the complaint by direction of the court as to said defendant upon the opening of the case, and also from an order of the Supreme Court, entered in said clerk's office on the 28th day of June, 1921, denying the plaintiff's motion to set aside the dismissal of the complaint against the city of New York.

*Blackman, Pratt & Koehler* [*Edward L. Blackman* of counsel], for the appellant.

*George P. Nicholson, Corporation Counsel* [*Henry J. Shields* of counsel; *John F. O'Brien* and *Joseph Beihilf* with him on the brief], for the respondent The City of New York.

*Edwards, O'Loughlin & George* [*David G. George* of counsel], for the respondent Garfield National Bank.

*Jacob I. Berman,* for the respondents Jacob Volk House Wrecking Co., Inc., and another.

MERRELL, J.:

This action is brought to recover damages by reason of the death of plaintiff's intestate, which it is alleged was due to the negligence of the defendants. Plaintiff, in her action, joined as parties defendant the City of New York, Garfield National Bank of the City of New York, Jacob Volk House Wrecking Co., Inc., and Jacob Volk, individually, 742 Seventh Ave. Corporation, Greenwich Associates, Inc., and Frank Melton. At the trial and upon the opening of the case by counsel for the plaintiff, the court dismissed the complaint of the plaintiff as against the defendant Garfield National Bank of the City of New York, and at the close of the plaintiff's case, upon motion of counsel for the defendant The City of New York, the complaint was dismissed as against said last-mentioned defendant. As to the defendants Jacob Volk and Jacob Volk House Wrecking Co., Inc., the jury returned a verdict for the defendants. As against the defendants 742 Seventh Ave. Corporation, Greenwich Associates and Frank Melton, the jury rendered a verdict in plaintiff's favor for $30,000 damages. None of the defendants against whom the jury returned a verdict have appealed.

Plaintiff's intestate was killed while walking upon the sidewalk in front of the premises situate at the corner of Seventh avenue and Forty-ninth street, in the borough of Manhattan, on March 24, 1920. Plaintiff was walking beneath a bridge or staging which had been erected over the sidewalk. The premises at that time were owned by the respondent Garfield National Bank of the City of New York. In November, 1919, the said owner made a long-term lease of the premises to the defendant 742 Seventh Ave. Corporation, under which the last-named defendant was to make certain repairs and alterations to the building then standing upon the premises, at its own cost and expense. Pursuant to the terms of such lease the defendant 742 Seventh Ave. Corporation took possession of said premises and entered into a contract with the defendant Greenwich Associates, Inc., for the demolition of the old building thereon and the erection of a new one. The defendant Greenwich Associates, Inc., sublet the work of demolishing the old building to the defendant Frank Melton, and the latter proceeded to perform his contract. The defendant Greenwich Associates, Inc., also made a separate contract with the defendant

Volk House Wrecking Co., Inc., for the erection of a bridge over the sidewalk adjacent to the premises for the protection of pedestrians during the progress of building. Such bridge or structure was erected by the Volk House Wrecking Co., Inc., under a permit which was granted to it by the city of New York, Greenwich Associates, Inc., reimbursing the defendants Melton and Volk House Wrecking Co., Inc., therefor. During the demolition of the old building and the erection of the new structure, a considerable quantity of building material, consisting of old brick which had been removed from the building which was torn down, and steel girders to be used in the erection of the new building, were piled upon the bridge or scaffolding which had been erected by the Volk House Wrecking Co., Inc., over the sidewalk. As the result of the weight placed upon the structure the same collapsed and plaintiff's intestate was crushed by the falling bridge and building material which had been placed thereon.

It is the contention of the appellant that the court improperly dismissed the complaint on opening of counsel as to the Garfield National Bank of the City of New York. While perhaps it would have been better to have awaited the development of the testimony, the evidence in the case indicates that in no event could the Garfield National Bank have been held liable. It was merely the owner of the real estate in front of which plaintiff's intestate came to his death. The only possible connection of the Garfield National Bank was that of owner of the premises. Said defendant took no part whatever in the demolition of the building. It had granted a long term lease to the 742 Seventh Ave. Corporation. The said defendant was out of possession of the premises, having leased the same in their entirety for a long period of years, and under the authorities was not liable for any negligence on the part of the tenant, or for a nuisance created or maintained by the tenant, if such nuisance there was. (*Clancy* v. *Byrne,* 56 N. Y. 129; *Wolf* v. *Kilpatrick,* 101 id. 146; *Trustees of Canandaigua* v. *Foster,* 156 id. 354.) I am, therefore, of the opinion that no error was committed by the learned trial court in dismissing the complaint as to said defendant Garfield National Bank of the City of New York.

As to the defendant The City of New York, counsel for the appellant contends that the city was liable for what it charges was an unsafe and negligent construction of the shed in question. The appellant contends that the city was under legal obligation to see that the bridge which was erected over the sidewalk was kept in a reasonably safe condition for public travel beneath. It seems to me that the city could not be held liable under the

circumstances of this case. A permit for the erection of the shed in question was made by the properly constituted authorities, namely, the bureau of highways of the city, and in granting such permit no liability on the part of the city was created for any alleged defect in the construction or maintenance thereof. The bureau of highways is a branch of the borough president's department and as such issued the permit for the erection of the shed which collapsed. Immediately upon the granting of such permit the supervision and control of the erection and maintenance thereof fell under the jurisdiction of the bureau of buildings, and the city, under many adjudicated cases, was not responsible for the acts or omissions of that department. The sole function of the borough president's office in relation to work to be done on private property under the provisions of the Building Code was to issue a permit for erecting a shed over the sidewalk in cases provided for by the charter. By section 383 of the Greater New York charter (Laws of 1901, chap. 466, as amd. by Laws of 1907, chap. 383; since amd. by Laws of 1921, chap. 170) it is provided that the borough president shall within the borough for which he shall have been elected have cognizance and control of the issue of permits to builders and others to use or open the streets. Under section 190 of the Building Code, as contained in article 10 of chapter 5 of the Code of Ordinances of the City of New York, relating to "Safeguards during construction or demolition," and which section is entitled "Enforcement of article," it is provided that "Except as may be otherwise provided by law or ordinance, the provisions of this article shall be enforced by the superintendent of buildings, and all safeguards required by the provisions of this article or by any rules authorized thereunder shall be subject to the supervision of the bureau of buildings."

By section 191 of said Building Code, entitled "Sidewalk sheds," it is provided that "whenever any building or a part thereof, within ten feet of the building line, is to be erected or raised to exceed forty feet in height, or whenever such a building more than forty feet in height is to be demolished, the owner or the person doing or causing such work to be done shall erect and maintain during such work a substantial shed over the sidewalk in front of said building and extending, so far as practicable, from building line to curb." And it is also provided by said section that such shed shall be kept properly lighted at night. (See Cosby's Code of Ordinances [Anno. 1925], p. 85.) It, therefore, seems plain that the borough president was responsible for the maintenance of the city streets, but was obliged to grant permits for the

17

obstruction of such streets when necessary to the improvement of adjacent property. The work for which the permit in question was granted was a necessary one in the reconstruction of the building upon the premises. The function of the borough president and his department was to issue the permit, and with such issuance, under the provisions of the Building Code, the jurisdiction of the borough president ended and the superintendent of buildings then became invested with the control and supervision of the building and maintenance of the shed. Furthermore, the city of New York was not responsible for any possible negligent enforcement of the provisions of the Building Code. The superintendent of buildings was not an agent of the city of New York, but a public official having powers and duties foreign to the jurisdiction of the city. (*Connors v. Mayor*, 11 Hun, 439; *Maxmilian v. Mayor*, 62 N. Y. 160; *Stubley v. Allison Realty Co.*, 124 App. Div. 162, 164.) In the last-cited case Mr. Justice McLAUGHLIN, writing for this court, said: " The building department is not an administrative department of the city. It is a bureau created by statute to perform a public service, in which the city itself has no private interest and from which it derives no special benefit or advantage in its corporate capacity, and for any neglect, either of omission or commission on the part of the officers connected with such bureau, the city is not liable. (*Maxmilian v. Mayor*, 62 N. Y. 160; *Fire Ins. Co. v. Village of Keeseville*, 148 id. 46; *McGuinness v. Allison Realty Co.*, 46 Misc. Rep. 8; affd., 111 App. Div. 926; *Connors v. Mayor*, 11 Hun, 439.)"

The law is well settled that when by statute a city has the duty placed upon it of carrying out a purely governmental function, it is not responsible for any alleged negligence in connection therewith. (*Maxmilian v. Mayor*, 62 N. Y. 160; *Hughes v. County of Monroe*, 147 id. 49; *Finkelstein v. City of New York*, 183 App. Div. 539; *Murtha v. New York, etc., Hospital*, 228 N. Y. 183.)

Plaintiff based her claim against the city solely upon the theory that the city wrongfully and unlawfully permitted and authorized the erection of the shed and scaffold in question, and after its erection wrongfully and unlawfully and with notice of its unsafe and dangerous condition and of the extra burden placed upon it, permitted its continuance, and that the same constituted a nuisance which the city authorized and permitted to exist and continue. The proofs do not support such claim. Undoubtedly the contractor performing the work was responsible for the improper loading of the shed with building material, but unless it can be said that the city was an insurer of the safety of pedestrians, the city should not be held liable for the collapse of the platform.

The appellant depends largely upon the authority of the case of *Parks* v. *City of New York* (111 App. Div. 836). In the *Parks* case the city had maintained a slightly elevated bridge for pedestrians over the building construction beneath, upon which pedestrians were required to walk, and it was held in that case by this court, and affirmed by the Court of Appeals, that the city was liable for the death of a pedestrian when the structure gave way. It seems to me that case was very different from the case at bar. The bridge or passageway which collapsed was erected with the permission of the city for the use of pedestrians, and this court held that the city by issuing a permit for such erection became a joint actor with the owner of the land and by reason thereof became responsible for neglect or fault of the owner in properly erecting such a bridge. The decision in the *Parks* case turned on actual notice which it was proven the city had received of the unsafe condition of the bridge which it had permitted to be erected for the use of pedestrians upon the street. There was a prior trial of the *Parks* case. On the first trial the action was prosecuted by the administratrix of the victim of the accident and a recovery was had against the city of New York. On the first trial it was proven that the attention of the city was first brought to the unsafe condition of the bridge on the morning of the day it collapsed. On appeal to this court the judgment entered as the result of the verdict of the jury in plaintiff's favor was reversed and a new trial granted upon the ground that the city did not have sufficient notice of the defect to render it liable. (*Coolidge* v. *City of New York*, 99 App. Div. 175.) On a retrial of the action additional evidence was given showing that the city had had actual notice of the unsafe condition of the bridge for several days prior to its collapse. A recovery was again had against the city and the judgment entered thereon in plaintiff's favor was affirmed by this court (*Parks* v. *City of New York*, 111 App. Div. 836) and the judgment entered on the affirmance by this court was affirmed without opinion by the Court of Appeals (187 N. Y. 555). The opinion in this court sustaining plaintiff's recovery at Trial Term was written by McLaughlin, J., O'Brien, P. J., concurring therein; Ingraham and Houghton, JJ., concurring in result, and Clarke, J., dissenting. The decision of the case in this court turned upon the proof adduced upon the second trial that the city had received actual notice of the unsafe condition of the bridge so long before the accident that it was chargeable with a negligent omission of duty to put the same in reasonably safe condition for the use of pedestrians upon the street. It was also proven upon the trial that the city had workmen ready to respond

immediately to the call of the police in case of emergency, to remedy defects in structures of that character. The case at bar is barren of evidence showing actual notice to the city of the unsafe condition of the shed which collapsed. The opinion of Mr. Justice McLAUGHLIN clearly shows that the second recovery in the *Parks* case was sustained because of the fact that the city had actual notice of the defective bridge in ample time to remedy the defect.

After referring to the previous history of the case where a recovery was set aside by this court, Mr. Justice McLAUGHLIN says: " The evidence on the second was substantially the same as that offered upon the first trial, except that additional evidence was given tending to establish that the city had actual notice of the defective condition of the sidewalk before the accident occurred. The facts relating to the accident, the construction of the bridge or temporary sidewalk, its weakness and final collapse, are fully set out in the opinion delivered on the former appeal, and, therefore, it is unnecessary to restate them or refer to any but the additional bearing on those subjects. On that appeal this court held, Mr. Justice INGRAHAM writing the opinion, that there was ' evidence from which the jury could find that the braces to make such a structure safe were omitted, and that it was the absence of those braces that caused the structure to fall.' The reversal of the judgment, so far as the city was concerned, was upon the ground that it did not have sufficient notice of this defect. It then appeared that the city did not have actual notice of the defective condition of the bridge until the morning of the day the accident occurred, and this was held to be insufficient to charge the city with a failure to take precautions to strengthen the bridge. On the trial which resulted in the judgment now appealed from, it appeared that the city had actual notice of the defects several days before the accident occurred. The witness Baxter, a policeman stationed in that locality at and immediately prior to the accident, who was not a witness on the first trial, testified in substance that the bridge from the time it was constructed, which was nearly a month before the accident, was shaky and vibrated when walked upon; that five or six days prior to the accident one Hess called his attention to its unsafe condition, and advised him to report it to the station house, and at the same time said if he did not make such report he would do so himself. And he is corroborated by the witness Hess, who testified that he called Baxter's attention to the unsafe condition of the bridge in case a parade should pass there. Baxter further testified that after his attention had been called to the bridge by Hess, he did, several days before the accident, make an oral report at the station house to the captain in charge that the bridge

was unsafe in case a parade passed there. He also testified that he made a written report on the day of the accident and about eighteen hours before it occurred. This report was made at twelve-twenty A. M., and the accident occurred about six P. M.

" The testimony was uncontradicted. * * *. Notice to Baxter — a police officer — was notice to the city. (*Rehberg* v. *Mayor, etc.., of City of New York,* 91 N. Y. 137.) Notice to any officer charged with police powers, irrespective of his rank or grade, is notice to the city. (*Johnson* v. *City of Poughkeepsie,* 29 App. Div. 16.) "

It, therefore, seems that the *Parks* case is not an authority in support of the contention of the appellant in the case at bar. The decisive element of actual notice in the *Parks* case is wanting in the case at bar. The *Parks* case presented quite a different situation from that in the case before us. In the *Parks* case the weakness and shaky condition of the bridge was easily discoverable and was manifest to the casual pedestrian who walked upon it. Indeed, a passerby called the attention of a policeman to its unsafe condition several days before it fell. There was every reason why the instability of the bridge should be made known to the city. Its use demonstrated its weakness. In the case of the shed it looked and seemed substantial according to the testimony of several witnesses and there was no warning until it fell. The city had no knowledge that it was overburdened or in an unsafe condition. Indeed, no one seems to have anticipated its collapse. In the case at bar the city did not permit any interference with the sidewalk, but merely granted a permit for the erection of the scaffolding over the sidewalk. Some years after the decision of the *Parks* case this court unanimously held in *Buckley* v. *City of New York* (135 App. Div. 512) that " The obstruction was a lawful one and such as must of necessity be created from time to time. It was not *per se* a nuisance which the city authorized or permitted and thus became a partner in, like those in *Cohen* v. *Mayor,. etc., of N. Y.* (113 N. Y. 532); *Speir* v. *City of Brooklyn* (139 id. 6); *Landau* v. *City of New York* (180 id. 48). That the city issued a permit for the excavation under the facts of this case merely establishes notice, but does not otherwise extend its liability. * * *. It was not an insurer of the safety of wayfarers."

I think the complaint was properly dismissed as to the defendant The City of New York.

The appellant also asks a reversal of the judgment entered upon the verdict of the jury in favor of the defendants Jacob Volk House Wrecking Co., Inc., and Jacob Volk, upon the ground that incompetent testimony was offered and received by the court as to the condition of the bridge, and that witnesses alleged to be

wholly unqualified were permitted to testify that the bridge in question was a substantial structure. In this regard the first alleged incompetent testimony was that of John J. Jennings, a witness sworn in behalf of the plaintiff, who, on cross-examination, testified that there was nothing dangerous about the bridge so far as he could see. This testimony was given without objection or exception on the part of the plaintiff. Elias J. Lyon, a witness on the part of the plaintiff, was asked on cross-examination to state whether or not the timbers used in the erection were substantial, and as an expert Lyon was permitted to testify that the bridge seemed substantial so far as he could see; that the uprights were all of good, sound timbers and well braced. Lyon further testified as to the manner in which the braces were placed and as to what he observed with reference to the construction, and to which no objection was made by counsel for the plaintiff. Further testimony along the same line was given by John A. Sonnett, also a witness for the plaintiff, who testified on cross-examination, in substance, that he never had any cause to complain about the erection; that he had passed it frequently and was familiar with it. Other witnesses were permitted to testify, mostly without objection or exception on the part of the plaintiff, that the bridge was properly constructed. As a part of the plaintiff's case witnesses were permitted to testify as to the condition of the bridge. This testimony was that of experts. Certainly the judgment and experience of men familiar with such structures was properly received as to the structure having been properly made.

So far as I can discover there is no testimony in the case showing that the defendants Volk House Wrecking Co., Inc., or Jacob Volk had any knowledge or information that the structure which they erected was to be overburdened. So far as appears the shed was sufficiently strong or, at least, the jury might have found it entirely sufficient to bear the burden reasonably expected to be placed upon it. I think the verdict of the jury should not be disturbed.

The judgments and orders appealed from should be affirmed, with separate bills of costs to the various respondents against the appellant.

CLARKE, P. J., FINCH, MCAVOY and MARTIN, JJ., concur.

Judgments and orders affirmed, with separate bills of costs to the various respondents against the appellant.