**SIKES CO., Inc. v. SWIFT & CO.**

Civ. No. 3774.

United States District Court
W. D. New York.

Jan. 19, 1949.

Kimball, Smith, Miller, Murphy & Roberts, of Buffalo, N. Y. (Clayton M. Smith, of Buffalo, N. Y., of counsel), for plaintiff.

Kenefick, Cooke, Mitchell, Bass & Letchworth, of Buffalo, N. Y. (Robert M. Hitchcock, of Buffalo, N. Y., of counsel), for defendant.

KNIGHT, Chief Judge.

This action was commenced in Supreme Court: Erie County, New York, but was removed to this court. After removal, defendant, pursuant to Federal Rules of Civil Procedure, rule 33, 28 U.S.C.A., propounded interrogatories which plaintiff answered and to which objection is now made.

The verified complaint, demanding $500,000 damages, alleges three causes of action. The first, based on breach of express warranty, alleges that, between June 14 and December 1, 1946, plaintiff purchased from defendant two 5-gallon drums and 15 barrels or drums containing about 50 gallons each of synthetic glue to be used in plaintiff's business for manufacture of chairs and other furniture, and particularly for gluing certain joints in chairs made by plaintiff and known as the "Bank of England"; that plaintiff, before purchasing, expressly made known to defendant the particular purpose for which the glue was needed and defendant warranted that the glue was reasonably fit and plaintiff relied on defendant's skill and judgment; that defendant's synthetic glue was not fit for the purpose for which it was purchased; that a large number of plaintiff's "Bank of England" chairs, glued with defendant's glue, were returned to plaintiff because of defects and it has and will suffer great business losses. The second cause of action, apparently based on breach of express contract, contains substantially the same factual allegations as the first. The third cause of action, based on the same facts, stresses plaintiff's resulting loss of business.

Defendant's answer, besides general denials, sets up eight separate defenses. After the service of the answer, defendant propounded 21 interrogatories which plaintiff answered.

Defendant at first urged that this action be dismissed, pursuant to Rule 37(d), because none of the answers to the interrogatories are under oath, as required by Rule 33. This defect has been corrected by stipulation and the objection withdrawn. This leaves the second phase of defendant's motion, namely, an order "2. Precluding plaintiff from offering at the trial any evidence pertaining to the subject matter of the interrogatories numbered hereinbelow, or in the alternative, striking the answers and directing full, complete, adequate and direct answers to interrogatories numbered 2(d), 3(c), 3(d), 3(e), 5(a), 5(b), 5(c), 6(a), 6(d), 7(b), 7(c), 8(a), 8(c), 8(d), 9(b), 9(d), 10(e), 11(a), 11(d), 13(a), 18(a), 18(b), 18(c), 18(d), and 21, on the grounds that said answers are evasive, irresponsive, incomplete, inadequate and insufficient."

Rule 33 requires that the interrogatories be answered "fully". Defendant's objection will now be considered in detail.

Interrogatory 2(d)—"State whether there were any oral arrangements or negotiations relating to any such returns and refunds and, if so, state when and where each was made, the full name of each person present on each occasion, and the full substance of the conversation of each such person." Answer—"Arrangement for return and refund made at 20 Churchill Street, Buffalo, N. Y. between William Sengpiel for plaintiff and Mr. Cox for defendant. In response to a complaint regarding oily substance in glue Mr. Cox called on plaintiff on December 4, 1946 and accepted return of two barrels with request that their actual shipment back to the defendant be held until Spring because the product would not ship properly in cold weather."

Interrogatory 2 arises from the allegations in defendant's fourth and fifth defenses set up in its answer, to wit, "That on or about the 5th day of May, 1947, plaintiff returned to defendant two 50-gallon tierces or drums of unused Glu-Bond and it thereupon requested the return of the price paid

therefor, which request was granted and the purchase price thereupon refunded."

In its answers to subdivisions (a), (b) and (c) of this interrogatory, to which no specific objection is taken, plaintiff states that on May 7, 1947, two drums were returned; that on October 31, 1947, $294.-20 payment was received and that there was no correspondence between the parties relating to any such returns or refunds. The answer to subdivision (d), therefore, appears to be sufficient.

Interrogatory 3(c)—"State upon what particular items of plaintiff's line of furniture the same (synthetic glue) was used, describing each item by trade name or other description." Answer—"Office chairs." Interrogatory 3(d)—"State what part or parts of each were joined with said synthetic glue." Answer—"Initially all parts, except seats." Interrogatory 3(e)— "State whether any part or parts of any such items were joined by any adhesive or glue other than said synthetic glue and, if so, what part or parts were so joined." Answer—"Initially seats, and later all parts except Bank of England top and arm assembly."

The answer to Interrogatory 3(c) is not "fully" made. The complaint alleges and realleges "That plaintiff is and at all times herein mentioned has been engaged in * * * manufacturing and selling an extensive line of office furniture, including particularly a chair known as the 'Bank of England' * * * that the plaintiff is one of the largest producers of office chairs in the country and one of the largest producers of office chairs of the 'Bank of England' type."

The term "office chairs" is indeterminate. It may mean all office chairs or only some. If it means only the "Bank of England" type, plaintiff must say so. If it comprises other types, plaintiff must designate each of these types by trade name or other description. The complaint does not limit the allegations of defective glue to the "Bank of England" type. The uncertainty of 3(c) invades 3(d) and 3(e), which are further obscured by the adverb "initially." Plaintiff in these two answers must give dates and, if the revised answer to 3(c) specifies lines of furniture other than "Bank of England" type of office chairs, these dates must be separately stated for each line.

Interrogatory 5(a)—"State what tests, trials or experiments were made of and with said synthetic glue, the date each was made, and the full name of each person who made or participated in the making of each." Answer—"Tests and trials having to do with the preparation, application and use of defendant's glue were made and had by and under the direction of the defendant's representatives, including Mr. Cox, commencing at or about the time the first order for said glue was given and continuing on several occasions thereafter, and the plaintiff commenced the use of said glue in production under the direction and supervision of said representatives of the defendant and in reliance upon their representations, warranties and statements that the said glue was suitable for use in the business of the plaintiff."

The latter part of this answer beginning with the words "and the plaintiff commenced" is irresponsive.

Defendant in its eighth defense set up in its answer alleges that plaintiff's alleged damage was due solely to its negligence in using the Glu-Bond "(a) without having made and conducted competent tests and inspections thereof as should have revealed and disclosed the defects and imperfections alleged in the complaint."

Plaintiff alleges breach of warranty but this is denied by defendant. Plaintiff's examination of the glue is a vital matter and plaintiff must give a fuller answer to 5(a), relating to its "tests and trials."

Interrogatory 5(b)—"State what inspection was made of each manufactured product, in the manufacture of which said synthetic glue was used, the full name of each person making such inspection, at what stage or stages of production each such inspection was made, and what each such inspection disclosed with respect to such manufactured products." Answer—"Inspection was made by the supervisory force of the office chairs in process of manufacture, plus inspection by the shipping department before the finished product was

packed and those inspections disclosed no failure. William Sengpiel and foremen of various departments." Plaintiff must state the precise nature of the inspections made by the supervising force and the shipping department and must also state when in process of manufacture the inspections were made.

Interrogatory 5(c)—"State what records of such tests, trials, experiments and inspections were made and kept by plaintiff, and the full name of each person in whose custody such records now are." Answer— "No formal records were made other than the mixing formula provided by Mr. Cox and the working notes and recollection of the plaintiff's employees. After inspection by supervisory force, as stated in Subdivision (b), entries were made in stock record of the chairs completed with the finish ready for shipment or held without finish awaiting direction of customer. William Sengpiel and there may be other employees whose names are unknown to the plaintiff at this time."

This answer is insufficient. The revised answer must state, if possible, the contents of the working notes and the employees' names.

Interrogatory 6(a)—"State each date plaintiff expressly made known to defendant the particular purpose for which said synthetic glue was required and for which it was to be used." Answer—"On or about the 14th day of June, 1946 and thereafter on several occasions Mr. Cox and another representative of defendant, whose name is unknown to this plaintiff, were shown the various operations performed by plaintiff in the manufacture of office chairs, and these representatives were made acquainted with the plaintiff's needs and requirements and the particular purposes for which the synthetic glue to be used."

Plaintiff must, if possible, give the dates of the "several occasions."

Interrogatory 6(d)—"If such was made known in whole or in part orally, state when and where each was made, the full name of each person present on each occasion, and the full substance of the conversation of each such person." Answer— "In addition to the information acquired by the defendant in 6-a, commencing June 14, 1946 and on various occasions thereafter (the exact dates of which cannot at this time be furnished) Mr. Cox and another of defendant's representatives called at plaintiff's plant and was either taken or on their own initiative went to the different places in the plant where the various operations in the manufacture of office chairs were being performed, and commencing on or about said date, and on various occasions thereafter they conferred and talked with R. A. Craig, Frank Waggoner, William Sengpiel and Mattie Katrien. The substance of the conversations was the explaining to the defendant's representative or representatives the type of manufacturing the plaintiff was doing, the various operations and processes employed by the plaintiff in the manufacture of its chairs and the use of adhesives in connection with such operations."

This answer appears sufficient.

Interrogatory 7(b)—"State whether said representations, warranties and agreements were made orally or in writing, and if any were in writing set forth or attach copies thereof." Answer—"Orally and see inserts to Interrogatory 8-b and c." 8(b) contains no insert. 8(c) mentions a technical data slip issued by defendant on Glu-Bond No. 1463-S, a copy of which is annexed and marked "Exhibit 8 C."

Interrogatory 7(c)—"If any were made orally, state when and where each was made, the full name of each person present on each occasion, and the full substance of the conversation of each such person." Answer—"June 14, 1946 and on several dates thereafter to which plaintiff does not have a reference at this time. The representations, warranties, statements and agreements were made at 20 Churchill Street, Buffalo, N. Y. In addition to the representatives of the defendant there were present on various occasions William Sengpiel, Frank H. Waggoner, R. A. Craig, and Mattie Katrien for plaintiff. The statements made by the defendant's representatives were in substance to the effect that Glu-Bond was the equal of and would do everything that animal glue would do; that the plaintiff need have no fear about the use of Glu-Bond; that it would do an

equal or better job than animal glue and that the plaintiff would have the assistance of Mr. Cox who was their sales representatives (sic) and would have no trouble through the use of Glu-Bond. They stated in substance that it was being used by several furniture manufacturers and that they were well pleased."

This answer is sufficient and also supplies the omission in the answer to 7(b), except as to the "several dates," which plaintiff must now give, if possible.

Interrogatory 8(a)—"State each date that defendant warranted and represented that said synthetic glue was suitable, adequate and proper for plaintiff's work and use, and particularly for gluing 'Bank of England' and other chairs." Answer—"Other than June 14, 1946 this plaintiff does not have reference to the exact dates on which the defendant and its representatives made the warranties and representations in regard to Glu-Bond set forth in Interrogatory 8-a, but does state in reply thereto that on several occasions between June 14, 1946 and January 1, 1947 the defendant made the warranties and representations set forth in said interrogatory."

Plaintiff, if possible, must now give "the exact dates" or as accurate as possible.

Interrogatory 8(c)—"Set forth or attach copies of each made in writing." Answer—"See technical data slip issued by the defendant on Glu-Bond No. 1463-S, copy of which is attached marked 'Exhibit 8 C' and defendant's advertising from time to time."

This answer is sufficient. Defendant should have copies of its own advertising matter.

Interrogatory 8(d)—"If any were made orally, state when and where each was made, the full name of each person present or each occasion, and the full substance of the conversation of each such person." Answer—"See answers to 7-a, 7-b, 7-c and 8-a." All these, except 7(a) to which defendant takes no objection, have been considered. The answer to 8(d) is sufficient.

Interrogatory 9(b)—"State the full name of each person to whom such instructions were given." Answer—"William Sengpiel, Mattie Katrien and various workers at sub-assembly points in plaintiff's plant." Plaintiff, if possible, must give the names of these "various workers."

Interrogatory 9(d)—"If any such instructions were given orally, state when and where given, the full name of each person present on each occasion, and the full substance of the conversation of each such person." Answer—"On June 14, 1946 and on several occasions thereafter, the particular dates are not known to plaintiff. 20 Churchill Street, Buffalo, N. Y. See 9a and 9b. Also Leo Zimba and the workers at various sub-assembly points instructed by Mr. Cox, whose names plaintiff made no note of at the time. When the first order of defendant's product was delivered Mr. Cox came to plaintiff's plant and supervised the mixing of the glue and furnished the plaintiff with a mixing formula. Then at Mr. Cox's request and under his supervision he put various men to work and went through several gluing processes on various parts of chair frames. Thereafter Mr. Cox checked the work which he had directed and said that Glu-Bond had done and would do the work satisfactorily, that it had been tested and had survived all of the various tests. Mr. Cox also directed the gluing of the backs, arms and stumps of the Bank of England chairs. He issued the instructions to the men, showed them how to apply the glue and what to do after it was applied." Plaintiff must, so far as possible, name the "various men" mentioned in its answer.

Interrogatory 10(e)—"If any such was given orally, state when and where given, the full name of each person present on each occasion, together with the full substance of the conversation of each such person." Answer—"Commencing June 14, 1946 and on several occasions thereafter the particular dates of which the plaintiff has no record at this time. 20 Churchill Street. William Sengpiel, Frank Waggoner, Mattie Katrien, Leo Zimba and others whose names are unknown to plaintiff at this time. They advised Mr. Cox as to various operations on which the glue was being used, together with some of the observations made and the manner in which it was mixed. Mr. Cox was present at all of these conversations and on some

occasion or occasions another representative of the defendant whose name is unknown to the plaintiff."

Plaintiff, if possible, must now give the dates of the "several conversations" and the substance of "these conversations."

Interrogatory 11(a)—"State the date of the agreement mentioned in paragraph numbered '11' of the complaint." Answer —"The agreement was made on or about the 14th day of June, 1946 and continued thereafter and formed part of subsequent purchases." Said Paragraph 11 alleges that between June 14, and December 1, 1946, plaintiff purchased specified synthetic glue from defendant and "that in and by the said agreement of sale and as one of the terms thereof the defendant expressly warranted and agreed that said glue was suitable for such purpose, etc." This answer is sufficient.

Interrogatory 11(d)—"If made orally, state when and where made, the full name of each person present when made, and the full substance of the conversation of each such person." Answer—"On the 14th day of June, 1946 at 20 Churchill Street, Buffalo, N. Y. Frank H. Waggoner, R. A. Craig, Frank Cox stated in substance that the defendant warranted and agreed that Glu-Bond was the equal of and would do everything that animal glue would do, and that it was equal to or better than animal glue, and if the plaintiff adopted and used it it would find that to be true and need have no fear about the use thereof and would have no trouble through its use."

Since it appears from the answer to Interrogatory 7(c) that Waggoner and Craig were plaintiff's employees, they could not bind defendant by their representations. Their names and that of Frank Cox are the plural subject of the verb "stated." Defendant is entitled to know the substance of the statements made by Cox only.

Interrogatory 13(a)—"State in what manner the said synthetic glue was not reasonably fit for the purpose for which it was sold by the defendant and purchased by plaintiff." Answer—"The joints wherein and whereon the defendant's glue was used were insufficient and inadequate and did not hold."

This answer is insufficient. Plaintiff must state on what lines of furniture defendant's glue was used. Plaintiff must specify more particularly wherein the glue was defective.

Interrogatory 18(a)—"State what sales and business plaintiff has lost as a result of said synthetic glue not being as warranted and represented and not being reasonably fit for the purpose for which it was sold and purchased." Answer—"The plaintiff is unable at this time to furnish the information requested for the reason that it would be impossible for (it) to know the nature and extent of the loss of sales and business other than to state that it is generally known that orders will not be placed with any manufacturer whose product has failed to be sufficient and requires additional servicing or return to the manufacturer because of manufacturing defect or inadequacy. By reason of the failure of defendant's product this plaintiff's reputation as a manufacturer of outstanding office furniture has been seriously and extensively damaged, and the loss of sales as a result thereof is not definitely known."

This answer is indefinite and insufficient. Plaintiff must now state (a) what its known damages are to date and (b) what future damages are reasonably expected.

Interrogatory 18(b)—"State the full name and address of each person, firm and corporation to whom sales and business were lost, together with the amount and volume of the lost sales and business of each." Answer—"Unknown."

In answer to Interrogatory 19(c), plaintiff estimated its loss of business at $100,000 and the damage to its reputation and good will at $250,000. It must have had data on which to make these estimates unless they are pure guesses. Plaintiff must therefore disclose its knowledge and give a full answer to Interrogatory 18(b).

Interrogatory 18(c)—"State the dates between which same were lost." Answer —"From the date of the failure of the plaintiff's product by reason of the insufficiency of the defendant's glue down to the date of the trial of this action and thereafter."

Plaintiff must specify the earliest known date of the alleged defect of its product.

Interrogatory 18(d)—"State the amount and volume of business from each said person, firm and corporation during each of the three years immediately preceding the first date specified in the answer to Interrogatory No. 18(c)." Answer—"Unknown. Plaintiff is unable to state specifically the loss of business from any particular source." This answer is wholly irresponsive. Defendant does not inquire about plaintiff's losses but about its business during the three years prior to the first loss. This must be answered.

Interrogatory 21—"State what local and what national advertising plaintiff had done in building up a demand for any products manufactured by it, giving the name of each newspaper, radio station, trade or other publication in or by means of which said advertising was had." Answer—"Saturday Evening Post and trade journal known as 'Office Appliance'; also periodicals and catalogues generally known in the trade as Dealer Aids." Plaintiff must name each newspaper and radio station, if any, and specify the "periodicals and catalogues."

■ It may be that plaintiff cannot prove its alleged damages with mathematical precision but, on the other hand, it is not permitted to rely on "mere speculation or guess" Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563, 51 S.Ct. 248, 250, 75 L.Ed. 544. It must offer some "relevant data." Bigelow v. RKO Radio Pictures, 327 U.S. 251, 264, 66 S.Ct. 574, 90 L.Ed. 652. "'All evidence,' said Lord Mansfield in Blatch v. Archer, 1 Cowp. 63, 65, 'is to be weighed according to the proof which it was in the power of one side to have produced, and in the power of the other side to have contradicted.'" Quoted in Layer v. City of Buffalo, 274 N.Y. 135, 140, 8 N.E.2d 307, 309.

"Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession."

Hickman v. Taylor, 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451.

Plaintiff, in answering the interrogatories as prescribed in this opinion, must disgorge the facts it now has in its possession.