EDWIN LAYER et al., Appellants, *v.* CITY OF BUFFALO,
Respondent.

Argued March 19, 1937; decided April 27, 1937.

*Ralph W. Dox* and *John G. Lesswing* for appellants. Plaintiffs gave sufficient evidence of negligence to require submission of the case to the jury. (*Messersmith* v. *City of Buffalo*, 138 App. Div. 427; *Oakes Mfg. Co.* v. *City of New York*, 206 N. Y. 221; *Silverberg* v. *City of New York*, 59 Misc. Rep. 492; *Capitol Trust Co.* v. *City of Schenectady*, 133 Misc. Rep. 56; *Kraus* v. *Birnbaum*, 200 N. Y. 130; *Lombardi* v. *New York State Rys.*, 224 App. Div. 438; *Feiber* v. *Copeland*, 232 App. Div. 504; *Hart* v. *Ruduk*, 233 App. Div. 453.)

*Gregory U. Harmon, Corporation Counsel* (*Bart J. Shanahan* of counsel), for respondent. The plaintiffs were bound to prove some act of negligence on the part of the municipality. (*Jenney* v. *City of Brooklyn*, 120 N. Y. 164; *Simon* v. *City of New York*, 82 Misc. Rep. 454; *Dunstan* v. *City of New York*, 91 App. Div. 355; *Messersmith* v. *City of Buffalo*, 138 App. Div. 427; *Capitol Trust Co.* v. *City of Schenectady*, 133 Misc. Rep. 56; *Sotel* v. *City of New York*, 81 Misc. Rep. 344; *Smith* v. *Mayor*, 66 N. Y. 295; *Wiedeman* v. *Mayor*, 84 App. Div. 321; 176 N. Y. 586; *Beyer* v. *New York*, 141 App. Div. 679.)

FINCH, J. These actions, grounded in negligence, were originally brought in the City Court of Buffalo, asking property damages against the defendant municipality, arising by reason of cellars flooded through the breaking of a water main owned and maintained by the city of Buffalo. The plaintiffs were nonsuited at the close of their case, the complaint being dismissed. Upon appeal to the Supreme Court the judgment was reversed and a new trial ordered. Upon further appeal to the Appellate Division, the judgment of the Supreme Court was unanimously reversed, the nonsuit reinstated, and permission granted to appeal to this court. By stipulation, the claims of eight plaintiffs were tried together.

On September 4, 1934, a small truck weighing about three tons, while proceeding along an asphalted street in the city of Buffalo, crashed through the center of the

street, thereby causing the immediate breaking of the water main below the surface. Immediately the water gushed forth in great quantity. The cellars of the plaintiffs were flooded to a depth of five feet and two to two and one-half feet of water accumulated in the street.

The plaintiffs allege two specifications of negligence, *first*, that the city wrongfully maintained the water main in a dangerous and unsafe condition, and *secondly*, that it did not take such precautions as were necessary properly to protect these plaintiffs from damages that might occur after the breaking of the water main.

The plaintiffs did not rely upon the principle of *res ipsa loquitur*, but offered evidence to prove negligence on the part of the defendant.

Following the leak in the water main, apparently the Water Department immediately responded. A witness on behalf of the plaintiffs testified that the city employees, instead of being directed at once to the manhole into which they might insert the wrench and begin to turn the valves to shut off the water, were looking around trying to find something — looking at different manholes, and picking up one cover after another until they found the proper manhole into which to insert the wrench. Three-quarters of an hour elapsed before they started to turn the valve. They then proceeded very slowly. Before the valve was shut off, three and one-half to four million gallons of water had escaped. This witness further testified that he had seen the previous flood from the same water main, which happened about a year previously, in July, 1933, and that both breaks had occurred in front of the same house. The Water Department admitted that two breaks occurred in the immediate vicinity, but insisted that the second break was 160 feet away from the first. As the complaint has been dismissed at the close of the plaintiffs' case, the testimony must be taken most favorably to the plaintiffs. Because of the difficulty of obtaining witnesses who knew the plans and conditions affecting the water main, the plain-

tiffs were forced to call as witnesses the representatives of the Water Department of the city, namely, the Director of Water, an engineer in charge of pipe estimates, and the Deputy Director, all of whom were presumably hostile, since the establishment of negligence would reflect upon their management of the department. One of these witnesses, the engineer, testified that he had studied these leaks and was of the opinion that they arose from the vibrations in the streets, which drove the lead out from the joints, thereby letting the joint leak, and undermine the adjacent pipe. In other words, that the leak had washed away the foundation of earth and clay underneath the pipe, thereby depriving it of support. Thus the Water Department had knowledge of the weakened condition at least of this section of the main by reason of the first leak, and the witness added, " Q. So that any body in the City could expect a flood at any time? A. I would expect so, yes." The evidence showed that the main was composed of cast iron pipes, each twelve feet long, thirty-six inches in interior diameter, one and one-half inches thick, which were all united by ball and spigot joints, and lay about three feet below the surface of the street pavement, on a clay or dirt foundation, with wooden blocks at the ends. The pressure was about sixty pounds to the square inch. The mains could not be laid deeper because of an intervening sewer. When the pipes were laid, the street had a cobblestone pavement, which was later replaced by asphalt. For ten years prior to the break, the street had been used for heavy traffic. The water main was laid in 1888. The Director of Water testified that he had recommended to the municipality that all its water valves be reoiled and repacked. This was supplemented by one of the engineers in the Water Department who testified, " We thought it would be a good idea to go over the valves in the City," to have them reoiled and repacked. Apparently nothing was done.

The question submitted is whether the testimony is sufficient to make out a *prima facie* case of negligence so as to compel the city to go forward with its proof.

There is no dispute that where a municipality is acting, as here, in a proprietary capacity, liability attaches for negligence, and the standard of care is the same as that exacted from the proprietor of a private business. (*Oakes Mfg. Co.* v. *City of New York*, 206 N. Y. 221.)

When the plaintiffs show that a small truck proceeding upon an asphalted city street, can break through the pavement in the center of the street, thereby causing a six-foot hole in the water main, in the same place where the main had broken only a short time previously, and when the representatives of the city testify that the cause of the breaks is due to vibration from the ordinary use of the street, which is driving lead out of joints, thereby causing seepage and leaks, which wash away the foundation, leaving the pipe without support, sufficient has been shown to cause the city to go forward with its proof and repel the inference of negligence in maintaining this section of the water main. In other words, the plaintiffs show that in this section of the main, at least, the joints are leaking, thereby washing away the foundations upon which the pipes rest, leaving them constantly exposed to the very happening which occurred in the case at bar. This evidence establishes a *prima facie* case that the city is maintaining this section of the water main as a trap for vehicles and a constant menace to property owners whose homes border on this street.

The testimony on behalf of the plaintiffs also raises an issue as to whether the men sent to the work were properly equipped in order to enable them to locate at once the manhole through which the wrench should be inserted to turn off the valves, so that the damage from escaping water might be minimized, and whether they were properly supervised so as to work with reasonable speed. There is also some evidence as to the necessity of reoiling and repacking the valves.

The plaintiffs are not in a position to determine with greater precision what caused the second break, whether the first break was properly repaired or whether the situation revealed to the city in repairing the first break was of such nature that it reasonably should have made more extensive repairs or replacements, and whether all joints or only some should have been recalked. We should not demand too much in the way of evidence of negligence from the plaintiffs, who are not in a position to make a thorough investigation and determine what caused the bursting of the water main. " All evidence," said Lord MANSFIELD in *Blatch* v. *Archer* (1 Cowp. 63, 65), " is to be weighed according to the proof which it was in the power of one side to have produced, and in the power of the other to have contradicted."

It follows that the judgment of the Appellate Division should be reversed, and the order of the Special Term, granting a new trial, affirmed, with costs to the appellant in all courts.

CRANE, Ch. J., O'BRIEN, HUBBS, LOUGHRAN and RIPPEY, JJ., concur; LEHMAN, J., dissents.

Judgment accordingly.