OPINION OF THE COURT
 

 Wachtler, J.
 

 In an action to recover for damage to the plaintiffs’ premises as the result of a burst water main in a Manhattan street, a jury returned a verdict against the City of New York which owns the water main, and against Consolidated Edison (Con Ed) for negligently installing a gas pipe on top of the city’s water main. On this appeal by the city it is urged that there is no basis for holding the city liable because there is no evi
 
 *421
 
 dence of specific negligence by the city and, in this case, negligence cannot be inferred from the city’s ownership and control of the main under the doctrine of
 
 res ipsa
 
 loquitur, in view of the fact that Con Ed had access to the area and had been negligent in placing its gas pipe on top of, and pressing upon, the city’s water main. Thus the city claims that the judgment should be set aside and the complaint against it should be dismissed. In the alternative the city argues that it is entitled to full indemnity from Con Ed.
 

 The plaintiffs own a building on 79th Street, between Second and Third Avenues in Manhattan. The rear of the building extends to 80th Street where a city water main is installed beneath the surface of the road. During the early morning hours of May 10, 1972 the water main ruptured, flooding the street and the plaintiffs’ premises, including the parking lot, basement and part of the first floor.
 

 In January, 1973 the plaintiffs commenced this action against the city claiming, in effect, that the city was responsible for the damage because it neglected to repair and maintain the water main in a safe condition. The city entered a general denial and commenced a third-party action against Con Ed seeking indemnification on the ground that Con Ed negligently constructed and maintained utility equipment above the water main "thereby asserting undue stress” on the water main causing it to break. The plaintiffs then amended their complaint to join Con Ed as a defendant on the same grounds alleged by the city in the third-party complaint.
 

 At the trial it was established that in 1874 the city had installed a cast iron water main, 48 inches wide, four feet beneath the surface of 80th Street. Ten years later Con Ed’s six-inch gas pipe was installed above the city’s water main. In 1961 Con Ed added a repair or service clamp to the gas pipe immediately above the area where the city’s main ruptured in 1972. At the time of the accident Con Ed’s apparatus was resting upon wooden blocking and wedges, two inches thick, which in turn rested on top of the city’s water main.
 

 A witness called by the city testified that in his opinion the wooden blocking and wedges had been installed by Con Ed to support its gas pipe, but he also indicated this type of device was often employed by the city to hold its water mains in place. It was conceded however that a city rule, included in all installation permits, required utility companies to allow a "minimum clear distance” of six inches between "any * * *
 
 *422
 
 other subsurface structure and any part of a water main.” This rule, originally requiring a minimum clear distance of one foot, was first promulgated in the latter part of the 19th century, probably in 1883.
 

 The city’s experts explained that placing the gas pipe and clamp directly on top of the wooden wedges which rested on the city’s water main was an unsafe engineering practice because it placed undue stress on the city’s main, particularly during early morning hours when less water is drawn off and the pipe tends to vibrate from the internal pressure. In their opinion the stress exerted by Con Ed’s structure was sufficient to burst the main, and the fact that the water main had ruptured or "blown out” along the top, in the vicinity of the gas pipe clamp, indicated that Con Ed was responsible.
 

 Con Ed’s expert agreed that the pressure from the gas pipe and clamp could increase the stress on the city’s main, but stated that it would "not necessarily lead to a bursting of the pipe.” In his opinion the greatest point of stress would be on the opposite side of the main and the fact that it had burst on the top indicated to him, that the break was not caused by pressure from Con Ed’s gas pipe but rather by a lack of "earth support” beneath the water main. This he felt was probably due to a "wash out” of the supporting earth; otherwise he was "at a loss” to explain it.
 

 The city admitted that there was no record that it had ever inspected the water main after installation in 1874. It was not the city’s practice to routinely tear up city streets to inspect the water pipes. Unless there was some trouble with the water main — and there was no record of that in this case — the safest and most economical course was to leave the main undisturbed. Nor were city representatives dispatched to inspect repairs made by utilities. Although utilities were required to file plans and obtain permits for original installations, thereafter they acquired a "blanket permit” to make repairs and service connections to existing structures. Thus the city had not inspected, and in fact had not been notified, of the 1961 repair or modification to Con Ed’s gas line. There was also uncontradicted evidence that cast iron water mains had a useful life of at least 125 years, could last 500 years, and that such mains had been in use in Marseilles, France, for over 300 years.
 

 At the conclusion of the trial, which was limited to the liability issue, the court, in its charge, noted the contentions
 
 *423
 
 of the parties and instructed the jury on negligence. In addition, with respect to the city, and over its objection, the court charged the jury that "If the instrumentality — here the water main — causing the injury was in the exclusive control of the defendant [City of New York], and if the circumstances surrounding the happening of the accident were of such a nature that in the ordinary course of events it would not have occurred if the party having control of the instrumentality had used care under the circumstances, the law permits but does not require the jury to infer negligence from the mere happening of the accident.” The jury was also instructed that if they found both defendants negligent they should apportion the liability between them on a percentage basis.
 

 As noted, the jury found both defendants liable. The award was apportioned 30% against the city and 70% against Con Ed.
 

 The city alone appealed the verdict. By a divided court the Appellate Division affirmed (47 AD2d 300). The majority noted (at pp 302-303) that the doctrine of
 
 res ipsa loquitur
 
 is only a species of the more general principle of circumstantial evidence and held that "There was evidence from which negligence of the City could be inferred, because, among other things, the water pipe was 98 years old and there was no indication that the City had inspected it during that time, although concededly responsible for its maintenance. Further, that the City had no inspector present when Con Ed made its installations. * * * Inasmuch as the jury determination had a rational basis, it would do violence to the
 
 Dole v Dow
 
 [30 NY2d 143] rule to reverse and dismiss the case against the City.” The majority also held that the city was not entitled to indemnification from Consolidated Edison because the city had "shared” in causing the damage.
 

 Following the affirmance by the Appellate Division the parties stipulated that plaintiffs’ damages were $700,000. The city now appeals from the intermediate order affirming its liability.
 

 A water company, of course, has the duty of maintaining and repairing its water mains so as to avoid injury to abutting property owners and the public generally
 
 (Jenny v City of Brooklyn,
 
 120 NY 164;
 
 Layer v City of Buffalo,
 
 274 NY 135;
 
 George Foltis, Inc. v City of New York,
 
 287 NY 108; Liability of Water Distributor for Damage Caused by Water Escaping from Main, Ann., 20 ALR3d 1294, 1301-1302). Munic
 
 *424
 
 ipal corporations are held to the same duty of care as the private supplier of water
 
 (Layer v City of Buffalo, supra).
 
 The municipality however is not an insurer of its system
 
 (Jenny v City of Brooklyn, supra)
 
 and cannot be held liable for injury unless it is shown that the injury was caused by negligence in the installation or maintenance of the system
 
 (Jenny v City of Brooklyn, supra,
 
 at p 167;
 
 George Foltis, Inc. v City of New York, supra).
 
 Thus if the municipality has notice of a dangerous condition or has reason to believe that the pipes have shifted or deteriorated and are likely to cause injury, it must make reasonable efforts to inspect and repair the defect
 
 (Layer v City of Buffalo, supra; George Foltis, Inc. v City of New York, supra,
 
 at pp 115, 116).
 

 But all that is required is reasonable care. To expect or require a water corporation to regularly unearth its entire system is obviously impractical and would undoubtedly create new hazards. Thus it is settled in this State and elsewhere that unless there is some warning of a possible defect the public or private supplier of water is not obligated to tear up the streets to inspect its pipes
 
 (George Foltis, Inc. v City of New York, supra,
 
 at p 116; Liability of Water Distributor for Damage Caused by Water Escaping from Main, Ann., 20 ALR3d, pp 1302, 1323-1325).
 

 It is urged however that the city had the duty to inspect Con Ed’s installations because they were made with the city’s permission. In its brief Con Ed argues that "the granting of permission imposed upon the City a duty to inspect Con Ed’s work to see that the public is protected.
 
 Ehret v. Village of Scarsdale,
 
 269 NY 198”.
 

 Con Ed’s reliance on
 
 Ehret
 
 is misplaced. In the
 
 Ehret
 
 case gas escaped from a broken gas pipe connected to a drain leading to a building where a man was found dead. The gas pipe and the drain were installed in a street belonging to the village, but the pipes themselves belonged to third parties. The village however had granted a permit for the installation and it was claimed, by the decedent’s estate, that in failing to properly inspect the pipes the village had neglected its duty to maintain the streets in a safe condition. We noted that by granting the permit the village was charged with notice of the type of work to be done and that an open excavation, unless properly guarded, "creates a danger to wayfarers.” "To that extent”, the court by dictum stated, "a duty to inspect the work and to see that the public is properly protected, may
 
 *425
 
 reasonably be imposed upon the village”
 
 (Ehret v Village of Scarsdale, supra,
 
 at pp 204-205). But we also held that the village only had a duty to inspect and discover negligence where "the condition is apparent and the danger obvious” and thus had no duty to inspect for possible leaks in the pipes
 
 (Ehret v Village of Scarsdale, supra,
 
 at pp 205-206).
 

 Here of course the city owned the street and the water main and had a duty to maintain both. Con Ed emphasizes this and seems to urge that granting permission to excavate the streets under these circumstances enlarges the city’s duty and requires it to also inspect to see whether the utility’s installations may damage the city’s water main and flood the adjoining properties. But the duty to inspect the activities of third parties has only been imposed on municipalities when the permit authorizes dangerous or imminently dangerous activities in the city’s thoroughfares — such as conducting fireworks displays
 
 (Speir v City of Brooklyn,
 
 139 NY 6), creating a temporary sidewalk bridge
 
 (Parks v City of New York,
 
 187 NY 555, affg 111 App Div 836), erecting an overhead shed for construction debris
 
 (Metzroth v City of New York,
 
 241 NY 470), leaving a cart in the road
 
 (Cohen v Mayor, etc. of New York,
 
 113 NY 532) or creating an obstruction in the highway
 
 (Ehret v Village of Scarsdale, supra).
 

 When a municipality permits a utility to excavate a public street or sidewalk there is an obvious risk of injury to those using the thoroughfare. But it can hardly be said that the actual installation of the pipes themselves, by trained utility employees, ordinarily poses an obvious risk to existing water mains. Thus there is generally no reason to expect the city to inspect the utility’s installation, and no duty to do so
 
 (Von Lengerke v City of New York,
 
 211 NY 558, affg 150 App Div 98). There may be cases where the application for the permit indicates that conditions at the work site or the methods to be employed might pose a special risk to the city’s water system. But there is no evidence of that in this case. Indeed Con Ed’s installation of the clamp in 1961 was done under a "blanket permit” and the city did not receive notice of the nature of the work or that additional work was contemplated in the vicinity of its main. In sum, the city was not actually aware of the danger created by Con Ed and in the exercise of reasonable care was not required to routinely unearth its own main or to inspect every installation made by the utility in a public street where a city main was located.
 

 
 *426
 
 There is, then, no evidence that the city actually neglected its duty of maintenance. Of course it is not always necessary to prove that the owner was actually negligent in some particular respect. When the exact cause of the injury is unknown the doctrine of
 
 res ipsa loquitur
 
 permits the jury to infer negligence if the injury is the type which does not ordinarily occur without the neglect of some duty owed to the plaintiff and the defendant is in exclusive possession and control of the instrumentality
 
 (Abbott v Page Airways,
 
 23 NY2d 502, 510;
 
 Galbraith v Busch,
 
 267 NY 230, 234;
 
 George Foltis, Inc. v City of New York,
 
 287 NY 108,
 
 supra).
 
 The doctrine has been applied to water main breaks
 
 (George Foltis, Inc. v City of New York, supra;
 
 Res Ipsa Loquitur — Water Damage, Ann., 11 ALR2d 1179) and this type of event has frequently been cited as a typical example of a case where the doctrine is commonly applicable (see, e.g., 2 Harper and James, Torts, p 1082; Prosser, Torts [2d ed], § 42, p 202; Restatement, Torts 2d, § 328D, illustration 6).
 

 The theory is that water mains do not ordinarily break if they are properly installed and maintained, and that any break in the main was probably caused by the owner’s neglect of its duty, since the owner is generally in exclusive possession and control
 
 (George Foltis, Inc. v City of New York, supra).
 
 In such a case it is unnecessary to prove the exact cause of the injury in order to hold the owner liable since the circumstances show that the owner "is responsible for all reasonably probable causes to which the event can be attributed” (Restatement, Torts 2d, § 328D Comment
 
 g).
 
 On the other hand, proof that third parties have had access to the instrumentality generally destroys the premise, and the owner’s negligence cannot be inferred (see, e.g.,
 
 Murphy v City of New York,
 
 14 NY2d 532; see, also,
 
 Cameron v Bohack Co.,
 
 27 AD2d 362;
 
 Mercatante v City of New York,
 
 286 App Div 265) unless there is sufficient evidence that the third parties probably did nothing to cause the injury (Restatement, Torts 2d, § 328D, illustration 11). In this case Con Ed had access to the area and the proof did not eliminate its activities as a possible cause of the injury. On the contrary there was evidence, sufficient to convince the jury, that it was negligent in installing its apparatus on top of the city water main and that this negligence was causally related to the injury.
 

 Con Ed notes that we have held that "it is not necessary for the applicability of the
 
 res ipsa loquitur
 
 doctrine that there be
 
 *427
 
 but a single person in control of that which caused the damage”
 
 (Schroeder v City & County Sav. Bank of Albany,
 
 293 NY 370, 374; see, also,
 
 Corcoran v Banner Super Market,
 
 19 NY2d 425). In those cases however the inference was equally applicable to several persons because they shared a common duty and there was no indication that any one of them in particular had actually caused the injury. Here however the case was not tried on the theory that the inference could be drawn against both defendants and, in addition, the evidence indicates that it was more than likely that Con Ed was the party solely responsible for the break in the water main (see 2 Harper and James, Torts, pp 1098-1099).
 

 Thus despite the city’s ownership of the water main and duty to maintain it, in this case, neglect of the duty could not be inferred from the mere happening of the break in view of Con Ed’s activities in the area. And in the absence of proof of actual negligence by the city, there is no basis for holding it liable for any part of the plaintiffs’- loss. This we should add does not represent a departure from the concept of contribution announced in
 
 Dole v Dow Chem. Co.
 
 (30 NY2d 143,
 
 supra). Dole
 
 was never intended to alter the rules of liability for fault. When, as here, there is no evidence that a defendant was at fault, there is no reason why it should be required to pay a share of the damages.
 

 Accordingly, the judgment insofar as appealed from should be reversed and the causes of action relating to the City of New York should be dismissed.
 

 Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Fuchsberg and Cooke concur.
 

 Judgment, insofar as appealed from, reversed, with costs, and the causes of action relating to the City of New York dismissed.