DOBESS REALTY CORP. et al., Respondents-Appellants, v CITY OF NEW YORK, Respondent, and NEW YORK CITY TRANSIT AUTHORITY et al., Appellants-Respondents. (Action No. 1.)

612 WEST 137TH STREET CORP., Respondent, v CITY OF NEW YORK, Respondent, and WARSHAW CONSTRUCTION CORP., Appellant-Respondent. (Action No. 2.)

NEW YORK TELEPHONE COMPANY, Respondent-Appellant, v CITY OF NEW YORK, Respondent, and NEW YORK CITY TRANSIT AUTHORITY et al., Appellants-Respondents. (Action No. 3.)

DANIEL BRITO et al., Respondents-Appellants, v CITY OF NEW YORK, Respondent, and NEW YORK CITY TRANSIT AUTHORITY et al., Appellants-Respondents. (Action No. 4.)

SPIROS NITSOS, Doing Business as KING PIZZA, Respondent-Appellant, v WARSHAW CONSTRUCTION CORP., Appellant-Respondent. (Action No. 5.)

NEW YORK CITY TRANSIT AUTHORITY, Respondent-Appellant, v WARSHAW CONSTRUCTION CORP., Appellant-Respondent, and CITY OF NEW YORK, Respondent. (Action No. 6.)

First Department, March 3, 1981

**APPEARANCES OF COUNSEL**

*Robert H. Silk* of counsel *(Louis H. Cohen* and *George E. Ashley,* attorneys), for respondents-appellants in Action No. 4 and respondent-appellant in Action No. 5; and Empire City Subway Company (Limited), respondent-appellant in Action No. 1 and New York Telephone Company, respondent-appellant in Action No. 3.

*William F. Larkin* for Warshaw Construction Corp., appellant-respondent.

*Michael Gage* of counsel *(Leonard Koerner* and *Carolyn E. Demarest* with him on the brief; *Allen G. Schwartz, Corporation Counsel,* attorney), for City of New York, respondent.

*Joseph J. Klem* of counsel *(Ernest J. Williams,* attorney), for Consolidated Edison Company of New York, Inc., respondent-appellant in Action No. 1.

### OPINION OF THE COURT

*Per Curiam.*

In 1973 defendant Warshaw Construction Company contracted with the New York City Transit Authority, as agent for the City of New York, to construct a new subway entrance at Broadway and 137th Street in Manhattan. The plan required exposing a 50-foot portion of a 36-inch diameter cast iron water main, which had been installed in 1903. As Warshaw was required to excavate 15 feet below the main to allow for placement of a new sewer line, the water main was suspended by cables which were supported by steel beams or 12-inch timbers placed across the beams. It remained this way without mishap for about seven months until 3:45 P.M. on September 23, 1974 when a piece of iron measuring approximately 12 to 15 inches long and 8 inches wide broke out near the bottom portion of the main, causing extensive flooding damage to plaintiffs.

Numerous lawsuits were filed against Warshaw, the Transit Authority and the city alleging negligence in the supervision and maintenance of the water main and charging the city with failing to act diligently to shut off the water after receiving notice of the break. Several of the actions were consolidated and a joint trial on the issue of liability only was held before Acting Supreme Court Judge BLANGIARDO and a jury. At the conclusion of the trial, but before submitting the case to the jury, the court dismissed the complaints and cross claims against the city, and the jury thereafter found in favor of the remaining defendants, Warshaw and the Transit Authority. Plaintiffs moved post trial pursuant to CPLR 4404 to set aside the verdict. The court granted the motion and directed the entry of judgment in favor of plaintiffs and against Warshaw and the

Transit Authority. Warshaw and the Transit Authority appeal from the setting aside of the jury verdict, and plaintiffs appeal from the dismissal of the complaints and cross claims against the city.

■ We must first turn our attention to a procedural question regarding the timeliness of the appeals by plaintiffs Con Ed, Empire and New York Telephone from the trial court's dismissal of the complaints and cross claims against the City of New York. For reasons which follow, we find the appeals to be timely.

The attorneys for the plaintiffs in Action No. 4 (Daniel Brito *et al.*) filed and served a judgment on April 11, 1979 which vacated the jury verdict in favor of Warshaw and the Transit Authority, directed that judgment be entered against these defendants, and ordered that the Transit Authority have judgment over on its cross claim against Warshaw. While the dismissal of the complaint and cross claims against the city was contained in the body or recital portion of the judgment, there was no ordering paragraph to that effect in the decretal portion of the judgment. The April 11, 1979 judgment was never served by the city upon any of the parties.

On August 20, 1980, Con Ed filed and served a final judgment decreeing that the complaint and cross claims against the city were dismissed and filed a notice of appeal from that judgment the same day. Empire filed a notice of appeal from that judgment on August 21. On September 2, 1980, New York Telephone filed a final judgment decreeing that New York Telephone's complaint against the city was dismissed, and filed a notice of appeal from that judgment the same day. Plaintiffs Brito *et al.* followed a similar procedure but they have withdrawn their appeal from the judgment entered by them on August 12, 1980.

Warshaw and the city now argue that any appeal by plaintiffs from the April 11, 1979 judgment would be time barred, and that the judgments entered by Con Ed, New York Telephone and Empire should be dismissed on the authority of *Halloran v Virginia Chems.* (41 NY2d 386), wherein the Court of Appeals permitted an appeal to be taken from that portion of a judgment reciting the dismissal of a third-party complaint even though there was

no ordering paragraph to that effect. We need not reach the issue whether the holding of *Halloran*, permitting an issue to be heard on appeal despite an omission in the judgment as a matter of form, should be extended to foreclose a party from entering and appealing from a separate judgment in a severed action. (See *Schuller v Robison*, 139 App Div 97; *Tanzer v Breen*, 131 App Div 654, 657; CPLR 5012.)

We find that plaintiffs are not time barred from pursuing an appeal from the dismissal of their complaints and cross claims against the city because the city, the prevailing party on this issue, has never served plaintiffs with a judgment so providing. *(O'Brien v City of New York*, 6 AD2d 63.) The rule that service of a judgment or order on the appellant by the prevailing party is necessary to start the 30-day limitation period running, dates back at least 123 years. See *Fry v Bennett* (16 How Prac 402 [1858]) wherein it was stated at page 405 that the rule "enables the [losing] party to see and apprehend his precise condition in reference to the subject. And on the other hand, it leaves the prevailing party at full liberty to set the thirty days a running when he pleases, or to acquiesce in or allow an unlimited time within which to appeal, if he choose to do so."

In *Kilmer v Hathorn* (78 NY 228 [1879]) the Court of Appeals explicitly confirmed that rule, which today is apparently such a long-accepted part of New York's appellate practice as to require no case citations by one leading commentator. (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR, C5513:2, p 138.) When this court applied the rule in *O'Brien (supra)* Justice MCNALLY stated in his opinion (6 AD2d, at pp 65-66) : "In view of the fact that the City of New York in this case had the right to rely upon these previous decisions, no matter how well reasoned the argument for a contrary result might be, we cannot, in the circumstances, hold that its right to appeal is barred. If it should be deemed illogical to require, for appeal purposes, a notice of judgment to be served upon a party twice, merely because his appeal is against a co-defendant, then the matter should be one for correction by the Legislature rather than by this court. Until such action is taken by the Legislature or until the Court of Appeals

rules differently, we feel constrained to enforce the statute as construed."

Since that time the Legislature has not revised the statute to provide that service upon appellant of the judgment with notice of entry by any party will start the 30-day period running, and the Court of Appeals, although not discussing the issue at length, has followed *O'Brien* since enactment of the CPLR, which states the time limitation in essentially the same language as was interpreted by our courts in the earlier cases discussed above. *(Farragher v City of New York*, 19 NY2d 831, rearg den 19 NY2d 1014, decision on merits 21 NY2d 756, implicitly following *O'Brien v City of New York.)* Accordingly, we find plaintiffs' appeals timely, but affirm the dismissal of the complaints and cross claims against the city.

There were two theories of liability against the city: first, that the excavation work by Warshaw was a "dangerous or imminently dangerous" activity requiring the city to inspect the work being done *(De Witt Props. v City of New York*, 44 NY2d 417, 425); second, that the water valves were defective, resulting in an unduly delayed shut-off of the water flowing through the break and additional damage to plaintiffs *(Layer v City of Buffalo*, 274 NY 135; *Von Lengerke v City of New York*, 150 App Div 98, 104, affd 211 NY 558). On appeal, New York Telephone and Empire concede that the construction of the subway entrance was not inherently dangerous, but that the danger lay in the manner in which the water main was suspended. Con Ed only argues that the city is liable because water was still flowing from the pipe eight hours after the city received notice of the break. On neither ground do we find sufficient evidence to sustain liability against the city and accordingly affirm the judgments appealed from by plaintiffs.

On the first question, the city could be liable only if there was negligence by Warshaw. However, the jury found no negligence by Warshaw, and there was substantial expert testimony to support this finding. Thus the question whether the construction of the subway entrance or the method of suspension of the water main was such a dangerous activity as to require inspection and supervision by the

city is academic. On the second question, it appears clear from the testimony that the water still flowing from the main eight hours after the break represented drainage of the substantial amount of water in the 22-block length of 36-inch pipe which had been filled with water to a pressure of 60 pounds per square inch. The introduction into evidence of the log book entry of the Department of Water Supply which stated, in regard to the closing of the valves, "shut off no good", and the fact that water continued to run from the main after the valve shutoff, called for an explanation from defendants. *(Ettlinger v City of New York, 58 Misc 229.)* Defendants did come forward with an explanation, repeated by several defense witnesses and uncontradicted by any evidence put forward by plaintiffs, that the valve shutoff was completed by 5:30 P.M., and that the water flowing thereafter was runoff of water already in the water main. Accordingly, the evidence did not present a factual question for the jury's consideration of the allegation of defective valves.

The remaining issue concerns the jury's verdict in favor of defendants on the issue of negligence by Warshaw which was set aside by the Trial Judge. It is unnecessary to review in detail the complex testimony of the several expert witnesses who testified during this month-long trial as to the adequacy of the system utilized by Warshaw to support the water main. Plaintiffs presented one expert who testified that the break was caused by failure of the sling system to provide continuous longitudinal support, and by vibrations transmitted from heavy vehicular traffic on the decking above the construction, through the decking to the support beams, then to the cables, and ultimately to the water main. Defendants presented expert witnesses who testified in substance that the support system conformed to customary and standard engineering practice and that the break did not result from bending or from excessive vibrations transmitted to the water main.

By setting aside the jury verdict and directing a verdict in favor of plaintiffs as a matter of law, the Trial Judge granted the functional equivalent of summary judgment which could only have been justified if there were no issue of fact as to Warshaw's negligence. This was accom-

plished by the court's accepting as true the testimony of plaintiffs' expert, and rejecting as untrue the testimony of defendants' experts. But the credibility of these witnesses and the issue of fact presented by the conflicting opinions was for the jury to decide, and "if the verdict is one which reasonable men could have rendered after reviewing conflicting evidence, the court may not substitute its personal judgment in place of the verdict". *(Triggs v Advance Trucking Corp.*, 23 AD2d 777, 778; *Denmark v City of New York*, 40 AD2d 667.) Applying that principle to the evidence in this case we are constrained to reverse the directed judgment in favor of plaintiffs and reinstate the jury's verdict in favor of Warshaw and the New York City Transit Authority.

Accordingly, the judgment entered April 11, 1979 setting aside the jury verdict and finding in favor of plaintiffs against the New York City Transit Authority and Warshaw Construction Company is reversed, on the law, without costs, and we direct entry of judgment in favor of those defendants, and the dismissal of the complaint against them. The judgments entered August 20, 1980 and September 2, 1980 dismissing the complaints and cross claims against the City of New York are affirmed without costs. The appeal by plaintiffs Brito *et al.* from the judgment entered August 12, 1980 is permitted to be withdrawn.

KUPFERMAN, J. P., SANDLER, MARKEWICH, SILVERMAN and BLOOM, JJ., concur.

Judgment, Supreme Court, New York County, entered on April 11, 1979, reversed, on the law, without costs and without disbursements. The clerk is directed to enter judgment in favor of New York City Transit Authority and Warshaw Construction Company dismissing the complaint against them. The judgments of said court entered on August 20, 1980 and September 2, 1980, respectively, unanimously affirmed, without costs and without disbursements. The appeal taken by plaintiffs Brito *et al.* from the judgment entered on August 12, 1980 is permitted to be withdrawn.