■ GILLETTE SHOE COMPANY, INC., et al., Respondents-Appellants, v CITY OF NEW YORK, Appellant, and CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Respondent, et al., Defendant. RIVERSIDE HOUSEWARES, INC., Respondent-Appellant, v CITY OF NEW YORK, Appellant, and CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Respondent. LILLIAN WALDMAN, INC., Respondent-Appellant, v CITY OF NEW YORK, Appellant, and CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Respondent. PETER MAGNONE, Respondent, v CITY OF NEW YORK, Appellant, and CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Respondent. ARSOL MANAGEMENT CO., Respondent, v CITY OF NEW YORK, Appellant, and CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Respondent. ALAMEDA REALTY, Respondent, v CITY OF NEW YORK, Appellant and Third-Party Plaintiff-Appellant. CONSOLIDATED EDISON CO. OF NEW YORK, INC., Third-Party Defendant-Respondent. — Judgments, Supreme Court, New York County (Ostrau, J., upon jury verdict on the issue of liability), entered April 18, 1980 in favor of Peter Magnone, entered April 18, 1980 in favor of Arsol Management Co., entered June 10, 1980 in favor of Alameda Realty Co.; and interlocutory judgments of said court and justice (upon the same jury verdict), entered December 17, 1980 in favor of Gillette Shoe Co., Inc., *et al.,* entered March 14, 1980 in favor of Lillian Waldman, Inc., entered March 14, 1980 in favor of Riverside Housewares, Inc.; all of which adjudged the City of New York liable to plaintiffs and also adjudged the issue of liability in favor of

codefendant Consolidated Edison Company of New York, Inc. (Con Edison), unanimously modified, on the law, without costs, to the extent of vacating the decretal provisions imposing liability against the City of New York in favor of plaintiffs and directing in their stead judgment in favor of the city dismissing the complaints in these actions, and the judgments and interlocutory judgments are otherwise affirmed. Plaintiffs suffered damage as a result of a break in a 36-inch cast iron water main, lying beneath Broadway and 84th Street in Manhattan, on December 18, 1974. The main had been installed in the late 19th century, between 76 and 101 years prior to the instant rupture. In 1926, Con Edison, pursuant to a permit obtained from the city, engaged in extensive construction activity in the immediate vicinity of the point at which the water main broke. This work included installation of a 22-inch-wide duct containing 17 tubes of electrical cable which passed below the 36-inch water main. Upon excavation of the area, immediately after the instant water main break, the duct was found in direct contact with the water main, or nearly so, and the break in the main was very close to such point of contact. A city rule, prevailing in 1926, required utility companies to allow a minimum clear distance of six inches between its subsurface structures and any part of a water main. Plaintiffs commenced these actions against the city, which owned the water main, and Con Edison. At the jury trial on the issue of liability only, the plaintiffs proceeded against the city on two theories. First, it was contended, through the introduction of an expert's testimony, that the water main break was caused by the attack of anaerobic bacteria upon the pipe material. Plaintiffs set forth the manner in which water mains might be maintained in the face of the effects of such bacterial attack, prevalent in clay soil. Procedures for detecting bacteria include the taking of soil samples as close to the main as possible (though a sample obtained from beneath the adjacent sidewalk is adequate), followed by laboratory analysis to detect the presence of bacteria; and the deposit of "test coupons" of cast iron in the adjacent soil, followed by retrieval thereof, to determine the extent of deterioration of such material. If these procedures confirm the presence of anaerobic bacteria at a high level, the remedial step of "semicathodic protection" is to be undertaken. This procedure entails the placement of magnesium bars in the area and the connection of a cable between these bars and the water main. This causes the bacteria to attack the magnesium, while the cast iron water main is preserved. Second, it was contended, through the introduction of the testimony of a second expert, that Con Edison's act in 1926 of installing the duct in such close proximity to the water main caused increased stress on the main, eventually causing it to break. This theory of negligence, including violation of the aforementioned city's six-inch rule, was directed not only against Con Edison, but also against the city on the basis of its failure to discover such improper installation upon inspection, if any, of Con Edison's work. The jury returned a verdict in favor of the plaintiffs against the city only and in favor of Con Edison. In denying the city's motion to set aside the jury verdict, pursuant to CPLR 4404, the Trial Judge specifically found that the jury had accepted only the first theory, that of anaerobic bacterial attack. In our view, these theories are both insufficient as a matter of law and accordingly we vacate the judgment against the city and direct dismissal of these complaints. The city does have a duty to exercise reasonable care in the maintenance of its water system. Plaintiffs sought to detail actions required to maintain an urban water system comprised of century-old water mains buried beneath the streets. However, plaintiffs did not present an adequate showing that these actions were generally accepted or customarily utilized by persons or entities charged with the duty of maintaining water systems. Further, we are compelled to find

that the actions prescribed by plaintiffs have no reasonable limitations. There is no evidence in this record which would indicate the city should have had any greater awareness of the problem of anaerobic bacterial attack in this location than on any other pipe lying in clay soil in its vast water system. Implicit in this first theory is the imposition of a duty upon the city that it take soil samples and deposit "test coupons" at regular intervals along the thousands of miles of piping in the system which may be buried in clay soil. Liability upon such a theory is barred under the law of this State: "To expect or require a water corporation to regularly unearth its entire system is obviously impractical and would undoubtedly create new hazards. Thus it is settled in this State and elsewhere that unless there is some warning of a possible defect the public or private supplier of water is not obligated to tear up the streets to inspect its pipes". (*De Witt Props. v City of New York,* 44 NY2d 417, 424.) We do not believe that any liability can be imposed upon the city based upon the second theory, that of a failure to discover the improper installation of a duct by Con Edison in 1926 upon inspection, if any, of the work. There is no evidence in the record that any inspection by the city was undertaken. By the grant of the permit for construction of the duct, the city is charged with notice of the work to be done. However, a duty to inspect arises only where "the permit authorizes dangerous or imminently dangerous activities in the city's thoroughfares" (*De Witt Props. v City of New York, supra,* p 425). No such danger presented itself here in the utility's laying of cable beneath the street. The Court of Appeals in this last-cited case did state: "There may be cases where the application for the permit indicates that conditions at the work site or the methods to be employed might pose a special risk to the city's water system" (*supra,* p 425). This is not such a case as Con Edison's plans or application for the permit did not even note the presence of the water main at the construction site. Thus, "the city was not actually aware of the danger created by Con Ed[ison]" (*supra,* p 425). Were we not holding the second theory insufficient as a matter of law, we would still be unable to sustain the judgments and interlocutory judgments against the city on this theory. Given the exoneration by the jury of Con Edison, the party which prepared the plans and application for the permit and performed the allegedly negligent installation of the duct work in dangerously close proximity to the water main, a verdict against the city based upon this second theory of failure to discover this defect or inspect this work would have to be deemed against the weight of the evidence. Concur — Kupferman, J. P., Birns, Sullivan, Lupiano and Bloom, JJ.