Guidarelli v City of Schenectady (2018 NY Slip Op 08995)

BODY {
font-family : "Times New Roman", Times, serif;
font-size : larger;
}

P {
line-height: 150%;
text-indent: 2em
}

Guidarelli v City of Schenectady

2018 NY Slip Op 08995

Decided on December 27, 2018

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 27, 2018

526742

[*1]MICHAEL GUIDARELLI, Respondent,
vCITY OF SCHENECTADY, Appellant.

Calendar Date: November 20, 2018
Before: Garry, P.J., Mulvey, Aarons, Rumsey and Pritzker, JJ.


Burke, Scolamiero & Hurd, LLP, Albany (Judith B. Aumand of counsel), for appellant.
Mitch Kessler, Cohoes, for respondent.

MEMORANDUM AND ORDER
Garry, P.J.
Appeal from an order of the Supreme Court (Buchanan, J.), entered August 3, 2017 in Schenectady County, which, upon reargument, denied defendant's motion for summary judgment dismissing the complaint.
In December 2009, a water main broke in the City of Schenectady, Schenectady County, causing flooding that damaged plaintiff's property. Plaintiff commenced this action alleging that defendant negligently maintained, operated and repaired the water system. Following discovery, Supreme Court (Reilly Jr., J.) initially granted defendant's motion for summary judgment dismissing the complaint, finding that plaintiff had failed to identify a triable issue of fact as to whether defendant acted negligently in stopping the water flow and repairing the break [FN1]. Plaintiff moved for renewal and reargument. Supreme Court (Buchanan, J.) granted the motion for reargument, denied defendant's summary judgment motion, and found that the motion for renewal had been rendered academic. Defendant appeals.
"[A] motion for leave to reargue pursuant to CPLR 2221 is addressed to the sound discretion of the court and is properly granted upon a showing that the court overlooked or misapprehended the facts and/or the law or mistakenly arrived at its earlier decision" (Loris v S & W Realty Corp., 16 AD3d 729, 730 [2005] [internal quotation marks and citation omitted]; see Cascade Bldrs. Corp. v Rugar, 154 AD3d 1152, 1154 [2017]). The original decision on defendant's summary judgment motion noted a discrepancy in the parties' claims as to when defendant shut off the water, but concluded that this discrepancy did not give rise to an issue of fact as to whether defendant's employees had acted negligently. Upon reargument, however, Supreme Court found that insufficient weight had been given to disparities in the testimony, which did give rise to triable issues of fact.
In support of its summary judgment motion, defendant submitted the testimony of its employee, David Jegabbi,[FN2] who stated that he first learned of the break at 7:10 a.m. or 7:15 a.m. when he received a telephone call from defendant's emergency official. This official was on call at night and on weekends to assist in emergencies and was responsible for notifying the appropriate employees of such matters as sewer backups and water main breaks. The official told Jegabbi that there was "a pretty bad break" and that "a car fell in the parking lot." The official did not indicate when he had first learned of the break.
Jegabbi testified that it took him between 15 and 20 minutes to get to the scene of the water main break. Upon his arrival, he saw a "[r]iver of water" flowing down the street, and a sinkhole in plaintiff's parking lot that contained a car. Jegabbi realized that a water main had broken based upon the volume of the water, which he estimated was flowing at a rate of 500 to 1,000 gallons per minute. To shut off the flow of water, he closed a valve, which took 15 or 20 minutes, and then closed a second valve, which took another 10 minutes. He stated that the water was turned off by 8:10 a.m. Thereafter, he summoned a repair crew; the repairs were completed by the end of the day. Jegabbi stated that his memory was imperfect but that, "[a]s far as [he could] remember," it was necessary to "crack the water main on again" temporarily during the repairs in order to identify the location of the break. He did not indicate how long the water was turned on for this purpose.
Defendant also submitted the deposition testimony of plaintiff, who said that he received a telephone call, at 8:30 a.m. or 8:45 a.m. on the day of the incident, notifying him of "a big water main break" on his property. Plaintiff testified that it took him five minutes to get to the property and that the water had not yet been turned off when he arrived. Water was flowing from the sinkhole and was "gushing" into the basement of one of his buildings, filling the basement with "[a] couple of feet [of mud]." The water continued to flow into the basement of an adjoining building, also owned by plaintiff, and exited through that building's back wall. Plaintiff estimated that the water was turned off for the first time between 30 to 45 minutes after his arrival — that is, between approximately 9:00 a.m. and 9:30 a.m. Half an hour later, the water was turned on again. Plaintiff stated that "the water [was] just pouring out," that he told defendant's employees that it was ruining his cellar and the floor, and that after 30 to 40 minutes, "finally they got it shut off." Plaintiff testified that he believed, based upon a newspaper article, that defendant had first been notified of the water main break at 4:00 a.m. Necessary repairs to his property included, among other things, filling the sinkhole, repaving the parking lot, removing 65 yards of mud from the basement, repairing the foundations of both buildings and replacing furnaces, doors, walls and flooring.
In reviewing this testimony upon the motion for reargument, Supreme Court found that two significant issues had been given insufficient weight in the previous decision — first, the discrepancy between the testimony of Jegabbi and plaintiff as to when the water was turned off, and second, the absence of any evidence as to when defendant first received notice of the break through the emergency official who telephoned Jegabbi. Viewing these issues in the context of the large volume of flowing water that Jegabbi observed when he arrived at the scene, the court found that the question whether defendant was negligent in responding to the break required submission to a jury. We find no error in this conclusion.
As the operator of a municipal water system, defendant is not liable for plaintiff's damages solely because flooding occurred (see De Witt Props. v City of New York, 44 NY2d 417, 424 [1978]; Biernacki v Village of Ravena, 245 AD2d 656, 657 [1997]). Nevertheless, defendant had a duty to exercise reasonable care in "maintaining and repairing its water mains so as to avoid injury to abutting property owners and the public generally" (De Witt Props. v City of New York, 44 NY2d at 423-424). Under this standard, defendant will be held liable in negligence if the evidence demonstrates that, upon receiving notice of the water main break, it [*2]failed to "make reasonable efforts to inspect and repair the defect" (De Witt Props. v City of New York, 44 NY2d at 424; see Biancaniello v Town of Colonie, 261 App Div 161, 162 [1941]; see also Holy Temple First Church of God in Christ v City of Hudson, 17 AD3d 947, 947-948 [2005]).
Initially, we reject defendant's contention that the conflicting testimony as to how long it took to shut off the water is immaterial because plaintiff failed to establish a factual link between the amount of water that flowed through his property and the amount of damage that the property sustained. This position is contradicted by the testimony of defendant's own witness, Jegabbi, who stated that his first concern when he arrived at the scene of the break was to shut down the flow of water as quickly as possible "so no other damage would be done." Further, as Supreme Court noted, the testimony established that, when Jegabbi arrived, the flowing water had already caused sufficient damage to create a sinkhole large enough to contain an automobile. Thus, the parties' differing claims as to how long it took for defendant to respond to the break and turn off the water are material to the question whether an unreasonable delay on defendant's part was a proximate cause of plaintiff's damages, and create credibility questions that must be resolved by a jury.
Defendant's submissions further establish that it received notice of the water main break through its employee, the emergency official, at some time before the official notified Jegabbi of the incident. However, the submissions fail to demonstrate when this notice occurred or whether the official acted promptly in communicating the information to Jegabbi. Moreover, Jegabbi's testimony that he received the emergency official's phone call at 7:10 a.m. is inconsistent with an interdepartmental memorandum that he prepared in December 2009 — also included in defendant's submissions — in which he averred that he received the telephone call from the emergency official at 7:40 a.m. Thus, the record does not permit a determination as a matter of law that defendant "promptly responded to the notification of a water leak and immediately commenced work to stop it" (Malfatti v 13 Gramercy Park S. Corp., 259 AD2d 420, 421 [1999], lv denied 94 NY2d 752 [1999]).
We find that defendant failed to meet its "burden to establish its prima facie entitlement to judgment as a matter of law by submitting admissible evidence demonstrating the absence of a triable issue of fact" (Roemer v Allstate Indem. Ins. Co., 163 AD3d 1324, 1325 [2018]; see generally Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). Accordingly, Supreme Court did not abuse its discretion in granting the motion for reargument (see generally Loris v S & W Realty Corp., 16 AD3d at 730) and did not err in denying defendant's motion for summary judgment (see D & D of Delhi, Inc. v Village of Delhi, 47 AD3d 1117, 1118 [2008]; see also Mason v Village of Newark, 110 AD3d 1438, 1439 [2013]; Verizon N.Y., Inc. v Village of Athens, 43 AD3d 526, 528 [2007]).
Finally, contrary to defendant's contention, plaintiff's claim is not limited to a claim for damages arising solely from the second burst of water. Although plaintiff's expert does aver that the "[t]he majority of the damage was caused after the valve had been shut off and turned back on," this does not prohibit plaintiff from also seeking damages related to the initial burst or from the alleged delay in responding to that incident.
Aarons, Rumsey and Pritzker, JJ., concur; Mulvey, J., not taking part.
ORDERED that the order is affirmed, with costs.
Footnotes

Footnote 1: Supreme Court made additional findings that are not challenged upon appeal.

Footnote 2: Jegabbi testified that he had retired from his former position as defendant's superintendent of water and worked for defendant at the time of the water main break as a consultant with responsibility for problems involving the water system.